Bexjamin Gassmau, P. J.
The defendant is charged with a violation of section 343 of the General Business Law in that, on February 13, 1958, when he appeared with counsel at a hearing conducted by the Attorney-General of the State of New York pursuant to article 22 of the General Business Law, in an investigation concerning alleged monopolistic practices of the Westchester Carting Company and others, and was duly sworn as a witness, he refused to answer a number of questions relevant to that investigation.
The minutes of the hearing before the Attorney-General show that after the defendant was duly sworn as a witness, the assistant attorney-general who conducted the hearing duly warned him of his constitutional rights. He was then asked seven questions as to whether he was employed by certain firms, among which was the Westchester Carting Company; one question as to whether he knew one, Nick Ratteni, and another question as to whether he was ever convicted of any crime. In each instance, the defendant refused to answer on the ground that his answer might tend to incriminate him, and he cited the Fifth Amendment to the Constitution of the United States. Following each such refusal to answer, the assistant attorney-general directed him to answer, advising him that such direction conferred immunity upon him, and informing’ the defendant that “if you refuse to answer after I have granted you immunity, you are subjecting yourself to arrest and possible imprisonment ”. The defendant, however, persisted in his refusals to answer.
Section 343 of the General Business Law authorizes the Attorney-General to conduct investigations, such as the one at which defendant was sought to be examined under oath. The Attorney-General, his deputy, assistant, or any other person designated by him is empowered to subpoena witnesses, compel their *1045 attendance, examine them under oath before himself, a magistrate, a court of record, or a judge or justice thereof. It also provides that if a person in attendance upon such inquiry shall without reasonable cause refuse to answer a question when ordered to do so by the officer conducting such inquiry, he shall be guilty of a misdemeanor, punishable by a fine of not more than $1,000 or imprisonment for not more than one year, or both.
Section 345 of the General Business Law authorizes the Attorney-General to 1 ‘ confer immunity in accordance with the provisions of section two thousand four hundred forty-seven of the penal law ”.
It is the defendant’s contention that his refusal to answer the questions was not without reasonable cause, because the immunity grant ed' to him by the Attorney-General protected him only against prosecution in the State courts, but not against possible prosecution in the Federal courts. This contention has no basis in law.
“ [I]t is well established that a witness cannot refuse to testify because the immunity afforded does not extend to possible prosecutions in other jurisdictions. All that a State is required to do, or can do, is to give protection against the use of the witness’ testimony in its own courts. If the law does that, as the statutes here purport to do, that is sufficient to satisfy the constitutional requirements against self-incrimination.” (Matter of Herlands [Carchietta], 204 Misc. 373, 375.)
In Dunham v. Ottinger (243 N. Y. 423, 438), the Court of Appeals said: “the main claim is that the statute does not properly safeguard him [defendant] by precluding the use of his testimony in criminal proceedings which might be instituted by the Federal government. This is true. The statute does not purport to give and could not give protection against such a prosecution. It does give ample protection against the use of such testimony in our own tribunals and it is perfectly well established that this is a sufficient immunity; that all that the State is required to or can do is to give immunity against its own processes and, if it has done that, as this statute does it, it has satisfied the requirements of the Constitution ”.
The above decisions are based upon the historic principle that the State and the Federal Governments operate as separate and distinct sovereignties, and that, generally speaking, each acts independently within its own-sphere. Hence the sufficiency of the exemption afforded by a State immunity statute depends on whether the statute extends complete protection to a party *1046 against prosecution in the State courts and the use of compelled testimony therein. If it does, then the privilege of refusing to testify on the ground of self incrimination no longer exists and the refusal to answer questions is without reasonable cause.
The history and development of the rule granting a witness the privilege of refusing to give self-incriminating testimony was fully traced by Professor Wigmore in his Treatise on Evidence (Vol. 8, pp. 338-339), wherein he stated the following: “ It is not in the power or duty of one State, or of its Courts, to be concerned in the criminal law of another State. For the former, there is but one law, and that is its own. The boundaries of our Constitution and our sovereignty are coextensive. A constitution is intended to protect the accused against the methods of its own jurisdiction and no other. The Court’s view, as well as its functions, should be confined to its own organic sphere.
“Practical considerations also deter. The Court of one State knows nothing of the policies and rules of other systems; and it risks error and adds great burdens in attempting to master them. Further, is cannot well know the probabilities of danger of prosecution under another system * * * Even if it could ascertain these elements of probability, it could not define any workable rule for measuring them. The only conceivable rule would be that when an act was by any possibility capable of being treated as criminal by the law of any other sovereignty, the privilege should protect it. That such a rule ■should be seriously suggested seems incredible
The question before us has also been considered by the Supreme Court of the United States in Hale v. Henkel (201 U. S. 43). In that case, a witness was questioned before a Federal Grand Jury in a criminal proceeding under the Sherman AntiTrust Law. The Federal statute afforded ample immunity to any witness testifying in such a proceeding. The defendant, however, refused to testify upon the ground that the Federal immunity statute would not protect him in any prosecution which might be initiated by the State of New York under a similar anti-trust statute of New York. He claimed that he was privileged to refuse to give testimony in the Federal courts which might incriminate him in any proceeding in the State courts. The objection raised the precise question now presented here and it was answered against the contention of that witness. It was conceded that the Federal immunity statute would afford no protection in a State prosecution, but notwithstanding, the court refused to recognize the claim *1047 of privilege, saying (pp. 68-69): ££ The further suggestion that the [Federal] statute offers no immunity from prosecution in the state courts was also fully considered in Brown v. Walker [161 U. S. 591], and held to he no answer. The converse of this was also decided in Jack v. Kansas, 199 U. S. 372, namely, that the fact that an immunity granted to a witness under a state statute would not prevent prosecution of such witness for a violation of a Federal statute, did not invalidate such statute under the Fourteenth Amendment. It was held both by this court and the Supreme Court of Kansas that the possibility that information given by the witness might be used under the Federal act did not operate as a reason for permitting the witness to refuse to answer ”.
Counsel for the defendant states in his brief that the defendant, in 1957, was a witness before the United States Senate Committee, known as “ The McClellan Committee ”, where he was asked the same questions as were propounded to him by the Attorney-General; that he refused to answer those questions on the same grounds asserted by him herein, and that he was thereupon dismissed by that committee. He asserts in his brief that “ to the best of defendant’s knowledge and information, he is still under investigation by the McClellan Committee ’ ’, and lie asks: £ £ under the circumstances can there be any doubt as to the defendant’s apprehension of Federal \ prosecution ”. He also asserts that ££ the New York Attorney j General’s office was working in close co-operation with the / Senate Committee ’ ’.
Aside from the above statements in defendant’s brief, we have nothing factually before us concerning those statements. There is no indication before us that any Federal proceeding is pending against the defendant, nor of any intention on the ' , part of any Federal agency to initiate one. Nor can we speculate that the investigation conducted by the Attorney-General concerns itself with anything else but the determination whether the State laws were violated. The language of the court in Dunham v. Ottinger (243 N. Y. 423, supra) furnishes an appropriate answer to the fears expressed in defendant’s brief. The court said (pp. 438-439): “We are not to assume that * * * the Attorney-General of the State will be oblivious of his duties, and this statute is by no means lacking in substantial provisions by which to safeguard its execution. Any inquiry under it must be relevant to the purposes proposed by it; any person of whom examination is sought is immune from punishment for a refusal to answer unreasonable questions or to comply with unreasonable requests; he is protected, if *1048 he asks the privilege, from the use of any testimony which he may give in criminal proceedings; and lastly, any official conducting an investigation or examination who gives publicity to the information which he has obtained, is himself guilty of a misdemeanor. Then, when we consider that in addition to these specific means of protection the courts will always be open for an appeal by one who is being persecuted, I think that it may be fairly expected that none of the dire predictions of the evils to flow from the statute will be realized and that, on the other hand, it may be a very substantial protection to the public from the widespread evils which have been perpetrated upon it through lack of adequate safeguards ”.
Were the defendant’s position here sustained, the State would be rendered powerless to conduct proper investigations and prosecutions in those areas of pernicious criminal activity, where virtually all important evidence rests in tainted hands. The resultant harm to orderly criminal law enforcement would be incalculable.
The purpose of immunity statutes is to obtain evidence from sources which otherwise would be be barricaded behind the privilege against self incrimination. In the investigation and prosecution of crime, vital evidence is frequently found exclusively in those mouths which would remain tightly shut but for the immunity statutes. New York State has enacted 48 immunity provisions, covering areas of investigation where tainted testimony is deemed most necessary (see Third Report of N. Y. Crime Comm., N. Y. Legis. Doc., 1953, No. 68, pp. 26-29) and similar provisions exist in varying numbers in most of the other States. This is the best indication' of the value of immunity statutes. The judicial approach to these immunity statutes should not take the form of an assiduous search for tedhnical reasons for their defeat. As the United States Supreme Court pointed out in Brown v. Walker (161 U. S. 591, 596): “ It can only be said in general that the clause [an immunity statute] should be construed, as it was doubtless designed, to effect a practical and beneficent purpose — not necessarily to protect witnesses against every possible detriment which might happen to them from their testimony, nor to unduly impede, hinder or obstruct the administration of criminal justice ’ ’.
The defendant’s refusal to answer the questions propounded to him, in the face of the immunity granted to him, was without reasonable cause. It constituted a' clear violation of the law. The defendant is accordingly found guilty.
Kozicke and Rossbach, JJ., concur.