Francis J. Clohessy, J.
This case was tried without a jury. The defendant is charged with criminal contempt in violation of *215 subdivision 6 of section 600 of the Penal Law under an indictment containing 17 counts.
The Grand Jury was engaged in an investigation to determine whether the crimes of conspiracy, bribery of public officials and violation of section 340 of the General Business Law had been committed in Tioga County.
In the course of such investigation the Grand Jury was making inquiry into a meeting of 62 or more persons near Apalachin, in the County of Tioga, on November 14, 1957. This gathering has been generally designated as the Apalachin meeting.
Defendant is a resident of the State of New Jersey. He was believed to have been in attendance at such meeting and was summoned to appear before the Grand Jury. After being sworn as a witness, he was asked 17 questions wdiich he refused to answer, asserting his privilege against self incrimination.
The Grand Jury then voted for and granted to the witness immunity under section 2447 of the Penal Law. The 17 questions were again asked him and he again refused to answer under claim of privilege. As a result the Grand Jury found and reported the indictment. Each count covers one question.
In an investigation of the kind involved in this case there apply certain basic and fundamental principles and rules to which reference may be advisable at this point.
With every right and privilege there are a corresponding duty and obligation. The right and privilege of citizenship in this Nation, either by birth or adoption, carry with them the duty and obligation on the part of the individual to speak out the truth when the People and the State through their representative request same.
“ For more than three centuries ” says Wigmore (8 Wigmore on Evidence, pp. 6A-66) “ it has not been recognized as a fundamental maxim that the public * * * has a right to every man’s evidence. * * * He who will live by society must let society live by him, when it requires to. * * * From the point of view of society’s right to our testimony, it is to be remembered that the demand comes, not from any one person or set of persons, but from the community as a whole,— from justice as an institution, and from law and order as indispensable elements of civilized life. ’ ’
Fellman in “ The defendant’s rights ” at pages 167 and 168 states as follows: ‘ ‘ The emphasis in our time upon the right of an individual to refuse to give testimony which -will convict him of crime has tended to obscure the fact that this right to remain silent is altogether limited and exceptional. For the general rule is that one has a duty to testify, and to testify truthfully, *216 * * * about matters in which grand juries * * * have legitimate interests.”
“ The testimony of people who have knowledge of the facts is essential if many of the processes of government are to function at all. * * * Clearly there is a duty to speak, for contrary to a widespread impression, there is no obsolute right to silence.”
Such duty and obligation are necessary to the administration of justice according to. the forms and modes established in our system of government. This duty and obligation must be performed if such system is to survive and be maintained.
There is only a limited privilege of refusing to testify. This privilege is known as that against self incrimination. 11 Privilege ” signifies the noncompellability to speak about the offense. The New York State. Constitution (art. I, § 6) provides: “ No person shall be * * * compelled in any criminal case to be a witness against himself ’ ’.
In connection with such privilege a statement of applicable principles of natural law may be of value. The right of the individual must yield to the good of the community. The right of self protection is not as important as the protection of civilized society and the right of immunity against self-incriminating testimony decreases as the clear and present danger to the State and community increases. Though the right to invoke the privilege is guaranteed by civil law the right disappears in the face of the threat of danger to the State and People. Loss of the privilege and constitutional protection may be consistent with the foregoing principles and law.
At this point it appears proper to localize the consideration. Under the peculiar and perilous conditions incidental to an investigation by a Grand Jury in which there is no specified charge or named defendant, a witness need be alert and on his guard at all times.
When a witness appears before the Grand Jury he is alone. He does not have the association, advice and protection of legal counsel. He must stand on his own.
He is subject to inquiry by the prosecuting officer and 23 laymen. There is no judge sitting with the Grand Jury to rule upon the relevancy, competency or materiality of questions.
To make answer to a single question may be the opening of the door by the witness that would tend to waive his privilege against self incrimination and compel him to answer all questions concerning the subject matter involved.
In order to avoid such danger the witness must exercise his privilege against self incrimination and resort to silence. To *217 overcome this danger, the Legislature has provided immunity for the witness through section 2447 of the Penal Law.
This section provides that “if a person refuses to answer a question * * * on the ground that he may be incriminated thereby, and, notwithstanding such refusal, an order is made by such competent authority that such person answer the question * * * such person shall comply with the order * * * then immunity shall be conferred upon him ”.
Two propositions seem to be set forth in such section: 1. Any immunity which is granted is complete. 2. None can be acquired unless the witness claims his privilege.
Immunity means exemption or release from. Immunity signifies the nonliability for the offense itself. By immunity any possibility of guilt ceases. By and through immunity the danger of prosecution no longer exists. With complete immunity there can be no self incrimination. Immunity replaces privilege.
To summarize, since the only consequence which the privilege against self incrimination avoids is a criminal prosecution, if a competent authority, such as the Grand Jury, promises in advance not to prosecute, as in the granting of immunity, then one has no right to remain silent and must fulfill the duty and obligation of speaking the truth. The simplest form of obstructing justice is to refuse to answer a legal and proper question by a competent authority.
Now to consider the proof. In evaluating the evidence I am taking in chronological order the elements which constitute the crime charged.
(1) There is the presumption of regularity. In addition there are many documents and the testimony of the County Clerk and foreman proving the formation and organization of the Grand Jury from its inception in the order of the court fixing the term of court and down through the required steps to the session behind closed doors at which the indictment was found. Likewise there is a stipulation covering such matter and signed by the defendant, his counsel and the District Attorney. From such evidence and as a matter of law I find that the Grand Jury was legally and duly constituted, organized and in session at and prior to the time of the finding of the indictment.
(2) The minutes of the Grand Jury and the stipulation of the parties establish that more than 16 grand jurors were present and in attendance throughout and on February 25,1958. From such proof and as a matter of law I find that more than a quorum of the Grand Jury was present during the consideration of this case and the finding of the indictment on February 25,1958.
*218 (3) The minutes of the Grand Jury for February 25, 1958, read in part as follows: ‘ ‘ Anthony Peter Riela, being first duly sworn as a Witness before this Grand Jury, testified as follows ”. This same fact appears in the stipulation by the parties. The foreman testified that he administered the oath to the witness. From such proof and as a matter of law, I find that the defendant was properly sworn as a witness at his appearance before the Grand Jury on February 25, 1958.
(4) The minutes of the Grand Jury establish that at the session of that body on February 25, 1958, the defendant was clearly informed by the District Attorney in these words: “ You will receive immunity from prosecution for any crime that may be revealed by your testimony. ’ ’
Likewise this discourse in the presence and hearing of defendant : Mr. Boldman: “ Mr. Foreman, * * * I ask if you have voted upon my request for immunity ”. Foreman, Grand Jury: “We have, Sir, and we voted to grant the immunity. ’ ’ Mr. Bold-man : ‘ ‘ And you have granted immunity to this witness, Anthony Peter Riela?” Foreman, Grand Jury, “ Yes ”. Mr. Boldman: “ Now, Mr. Riela, you have immunity from prosecution for any crime that may be revealed by your testimony ’ ’. Mr. Riela, “ Yes ”. This is clear and sufficient proof of the granting of immunity and the knowledge of same by the witness.
It is the defendant’s contention that his refusal to answer the questions was not without reasonable cause, because the immunity granted protected him only against prosecution in the State courts, but not against possible prosecution in the Federal and State courts other than New York. This contention has no basis in law.
The rule is well established that a witness cannot refuse to testify because the immunity afforded does not extend to possible prosecutions in other jurisdictions. All that a State is required to do, or can do, is to give protection against the use of the witness’ testimony in its own courts. If the law does that, as the statute here purports to do, that is sufficient to satisfy the constitutional requirements against self incrimination. (Matter of Herlands [Carchietta], 204 Misc. 373.)
The statute does not purport to give and could not give protection against a prosecution by Federal authorities. It does give ample protection against the use of such testimony in our own tribunals and it is perfectly well established that this is a sufficient immunity; that all the State is required to or can do is to give immunity against its own processes and, if it has done that, as this statute does, it has satisfied the requirements of the *219 Constitution. (Dunham v. Ottinger, 243 N. Y. 423; Hale v. Henkel, 201 U. S. 43; Brown v. Walker, 161 U. S. 591.)
The sufficiency of the exemption afforded by a State immunity statute depends on whether the statute extends complete protection to a party against prosecution in the State courts and the use of compelled testimony therein. If it does, then the privilege of refusing to testify on the ground of self incrimination no longer exists and the refusal to answer questions is without reasonable cause.
Were the defendant’s position here sustained, the People would be rendered powerless to conduct proper investigations and prosecutions in those areas of possible criminal activity, where virtually all important evidence rests in tainted hands. The resultant harm to orderly criminal law enforcement would be incalculable. The purpose of immunity statutes is to obtain evidence from sources which otherwise would be barricaded behind the privilege against self incrimination. (People v. Spiak, 11 Misc 2d 1043.)
To summarize, the rule is that when the danger of prosecution has been effectively removed, the reason for the privilege against self incrimination no longer exists and, consequently, the privilege cannot properly be asserted. Thus, where prosecution is barred by reason of a grant of immunity, the witness may be compelled to answer. In other words, when immunity is granted the State becomes entitled to the testimony. Refusal means punishment.
In this proceeding, immunity had been granted to and conferred upon the witness by the Grand Jury. Such immunity by its mere granting is and was complete and absolute as to defendant, and binding in all parts of and upon all agencies of the State (Matter of Greenleaf, 176 Misc. 566).
This immunity was the maximum which could be granted by New York State and therefore the requirement of the Federal and State Constitutions has been satisfied. (Matter of People v. Knapp, 4 Misc 2d 449.)
Defendant also contends that no immunity was granted, by reason of the fact that the minutes of the Grand Jury were made available to the State Commissioner of Investigation. This exchange and cooperation between branches of the State Government in no way impairs the complete immunity granted to the defendant. Such contention is without merit.
From such proof and as a matter of law I find that immunity was voted for and granted by the Grand Jury to the defendant within the meaning and coverage of section 2447 of the Penal Law.
*220 (5) The foreman testified as to the purpose and objective of the investigation that was being conducted by the Grand Jury, and particularly in seeking the purpose of the Apalachin meeting, who were there, what was done, if any law had been violated or crime committed, and why 62 or more men, some with criminal records, were present. The minutes of the Grand Jury for February 25, 1958, contain a lengthy statement by the District Attorney to the witness concerning the purpose and scope of the investigation, and particularly as to any commission of the crimes of conspiracy, bribery of public officials and other crimes in the County of Tioga, and as to the fact that the witness was in attendance at the Apalachin meeting with 61 other men. All of the questions asked concerned persons present at such Apalachin meeting and possible activities of the witness in connection therewith. The presumption is that the Grand Jury conducted and carried on an inquiry in good faith.
From such proof it appears that legal and proper interrogatories were propounded to the defendant, and that such interrogatories were material, relevant and pertinent to the issue and to the investigation then being conducted by the Grand Jury and I so find and hold as a matter of law.
(6) The. minutes of the Grand Jury of February 25, 1958, establish that the witness, after being granted and informed concerning immunity, refused to answer the 17 questions set forth in the indictment; and that the witness had been informed as to the nature and purpose of the investigation and as to the inquiry into the Apalachin meeting.
The witness had breaks in time during his appearance on the stand, providing the benefit of consultation with and advice by his counsel prior to his refusal to answer such questions.
In other words, the witness had every opportunity, time and source to gain full knowledge of the law, his position and his duty and liability.
This item appears in the Grand Jury minutes: “ I’ll ask permission to consult my lawyer. ” “ Yes — would you like a short adjournment? It will be noted on the record that the Witness requests permission to consult with his attorney for a short time.” Such conduct revealed that he was fully cognizant of what was going on.
I find as a matter of fact that by such conversation, conduct and action of the defendant there was established a willful, contumacious and unlawful refusal on his part to answer the questions propounded by and for the Grand Jury.
(7) Assuming, but not conceding, that the points of the defendant are well taken, there is nothing in the case that tends to *221 overcome the presumption that the indictment is based upon legal and sufficient evidence. That presumption continues until there is satisfactory proof to the contrary. (People v. Nitzberg, 289 N. Y. 523; People v. Howell, 3 A D 2d 153.) In this case there appears no such proof.
Defendant in his defense has advanced many points. Among other things he contends that the Grand Jury was without jurisdiction and power to conduct the investigation in the absence of a complaint or of evidence that a crime had been committed.
In support of such point he has cited the case of Matter of Morse (42 Misc. 664). This is a decision by the Court of General Sessions, New York County, in 1904. The court held that a Grand Jury must be shown by complaint or knowledge acquired that there is reason to believe a crime was committed , by particular persons, and may not institute any inquiry on chance or speculation. Since about 1906 no mention seems to have been made .of this case in New York opinions.
There do appear extensive references to the case of Blair v. United States (250 U. S. 273); Hendricks v. United States (223 U. S. 178), and Hale v. Henkel (201 U. S. 43, supra). In the Blair case the defendant questioned the authority and jurisdiction of a Grand Jury in an effort to set aside a conviction for contempt.
In affirming the conviction the court said (pp. 282-283): “ It is a grand inquest, a body with powers of investigation and inquisition, the scope of whose inquiries is not to be limited narrowly by questions of propriety or forecasts of the probable results of the investigation, or by doubts whether any particular individual will be found properly subject to an accusation of crime. * * * At least, the court and grand jury have authority and jurisdiction to investigate the facts in order to determine the question whether the facts show a case within their jurisdiction. ’ ’
In the Hale decision the court put forth the rule (p. 65) that “ the examination of witnesses need not be preceded by a presentment or indictment formally drawn up, but that the grand jury may proceed, either upon their own knowledge or upon the examination of witnesses, to inquire for themselves whether a crime cognizable by the court has been committed ”.
Before the defendant was called as a witness before the Grand Jury in the instant case, evidence was presented, according to the testimony of the foreman, to the Grand Jury that 62 men, including defendant, and some with criminal records, were in attendance at the Apalachin meeting. Certainly such evidence gave the Grand Jury reasonable cause to believe that a crime may have been committed in connection with that meeting.
*222 The Blair and Hale decisions above quoted appear to be the present day law and are adopted by this court in determining that the point is without merit.
In this case the defendant was not given any direction by the court and he did not appear at any time before the court prior to the reporting of the indictment.
The defense strongly stresses the contention that this failure to provide a direction by the court for the witness deprived the Grand Jury of the jurisdiction and right to find and report the indictment.
Although no decision in point has been found, still there seems to be an authority in the case of People v. Saperstein (2 N Y 2d 210) in which no direction by the court had been provided to the accused person before indictment and in which the court charged the jury as follows:
“ The law also says that a Grand Jury at times shall conduct inquiries and investigations to determine whether or not a crime has been committed, before it is possible to formulate a specific charge, or file an indictment, against any particular person or persons ”.
The fact appears in the record that the witness was clearly and thoroughly informed, in the presence, hearing and on behalf of the Grand Jury and prior to the asking of the questions and the finding of the indictment, as to the reason for and purpose of the investigation, the granting of immunity by that body and the effect thereof, and his resulting position. Likewise he was given the time and opportunity to consult with his attorney. The foreman said to him: “ Mr. Witness, on behalf of this Grand Jury, I order and direct you to answer that question.” Did not these things satisfy the purpose of a direction? What more could a direction by the court have accomplished?
Section 600 of the Penal Law and section 750 of the Judiciary Law provide for the violation, prosecution and punishment, and section 602 of the Penal Law provides for the finding of the indictment. These sections are silent as to a direction by the court, particularly under the facts of the instant case.
The Grand Jury is a part of the court. A contempt of the Grand Jury is a contempt of the court. A Grand Jury may indict for an indictable violation committed in its presence and official session. The authority of the Grand Jury to indict without a direction by the court to the witness is inherent in that body. I so find.
Any question as to whether a proceeding should have been conducted to determine if the person was a material witness within the coverage of section 618-a of the Code of Criminal *223 Procedure is collateral and not relevant to the issue in this case. The record tends to show that the witness appeared voluntarily.
Whether his refusal to answer the 17 questions set forth in the indictment constitutes one crime or 17 different violations is a necessary part of this decision. In the case of State v. Kasherman (177 Minn. 200) the holding is that each succeeding refusal to answer is a new contempt. In the Matter of Amato (204 Misc. 454) it is said that a separate and distinct act of contumacious and willful refusal to answer legal and proper interrogatories is a separate and distinct act of criminal contempt.
In this case each of the 17 questions is separate, distinct and independent. For such reason I find that the refusal of the defendant to answer each of the 17 questions constitutes and is a violation under each of the 17 counts of the indictment, that is, in the aggregate 17 violations.
To sift through and set apart the less-essentials and non-essentials is to unfold and reveal the essential elements necessary to constitute a case and violation within the purview of subdivision 6 of section 600 of the Penal Law.
I, therefore, rule that there were facts and circumstances proved sufficient to establish beyond a reasonable doubt that the defendant committed the acts as charged and set forth in the indictment.
I conclude and find that the People have sustained the burden of proof and have established beyond a reasonable doubt that the defendant is guilty of the crime of criminal contempt in violation of subdivision 6 of section 600 of the Penal Law, under each of the 17 counts of the indictment, and as such is guilty of a separate violation under each count.
Findings of fact and conclusions of law heretofore reached in this opinion are implicit in my verdict as the judge of the facts and the law.
I find the defendant guilty as charged.