THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. ANTHONY PETER RIELA, Appellant.

Third Department, December 31, 1959.

482

*Louis Mansdorf* for appellant.

*George Boldman, District Attorney; Eliot H. Lumbard, Chief Counsel, Carl A. Vergari* and *Joseph Fisch, Assistant Counsel,* New York State Commission of Investigation, for respondent.

Coon, J.   The defendant Riela was one of 62 or more men who gathered at the home of Joseph Barbara, Sr., at Apalachin, Tioga County, N. Y., on November 14, 1957, at what is now commonly known as the "Apalachin meeting". Thereafter a duly impaneled Grand Jury of Tioga County initiated an investigation to determine whether or not any crime or crimes had been committed or planned at the meeting, and particularly whether the crimes of conspiracy, bribery of public officials or violation of section 340 of the General Business Law, had been committed in Tioga County.   Since Riela lived in New Jersey a certificate was issued, pursuant to section 618-a of the Code of Criminal Procedure, stating that Riela was a "material and necessary" witness in the investigation; a hearing was held thereon in the Superior Court of New Jersey, Essex County, and a subpœna order issued directing Riela's appearance before the Tioga County Grand Jury.

Upon his appearance before that Grand Jury 17 questions relevant to the inquiry were propounded to him, and he asserted his privilege of self incrimination under the Fifth Amendment to each of the questions propounded.   Thereupon, at the request of the District Attorney of Tioga County, the Grand Jury voted to confer and did confer immunity, pursuant to section 2447

of the Penal Law. Riela was fully informed of the meaning and scope of the immunity granted and warned that failure to answer thereafter might result in a charge of contempt. He was given the privilege from time to time of consulting with his counsel. Each of the 17 questions was again asked, and in each instance the privilege against self incrimination was asserted and an answer refused. The foreman of the Grand Jury thereupon specifically ordered Riela to answer each question, one by one, and in each instance he refused. The Grand Jury thereupon indicted him for criminal contempt under subdivision 6 of section 600 of the Penal Law. The indictment contained 17 counts, each representing the refusal to answer one of the 17 questions which Riela refused to answer. A jury trial was waived, and the trial court found Riela guilty upon all 17 counts and he was sentenced to 60 days in jail upon each count, the sentences to run concurrently, and a fine of $250 was imposed upon each count.

Among other things appellant contends that he was given no opportunity to establish whether or not he was a material witness who could be properly summoned under the provisions of section 618 of the Code of Criminal Procedure. The summoning court certified that Riela's testimony was material, together with a recital of the facts upon which the materiality was based, and thus the materiality was at least prima facie established. The New Jersey court was not bound to order the appearance of Riela if it could be shown that his appearance was not material to the investigation, and when he was brought before the New Jersey court was the time to try out that question. Moreover, the trial for contempt itself provided a full hearing upon that question, and the requirements of due process have been met.

Appellant argues that only the presiding Judge could order the defendant to answer, and that the violation of an order by the Grand Jury, or the foreman of the Grand Jury, to answer, does not constitute criminal contempt. The Grand Jury is an arm of the court, and once it has a witness before it, is expressly authorized by statute to grant immunity and to make an order that the witness answer. The first sentence of subdivision 1 of section 2447 of the Penal Law reads: " In any investigation or proceeding where, by express provision of statute, a competent authority is authorized to confer immunity, if a person refuses to answer a question or produce evidence of any other kind on the ground that he may be incriminated thereby, and, notwithstanding such refusal, an order is made *by such competent authority* that such person answer the question or produce the evidence, such person shall comply with the order."

(Emphasis supplied.) Subdivision 3 of section 2447 defines "competent authority" to include: "(c) The grand jury before which a person is called to answer questions or produce evidence, when such grand jury is expressly requested by the prosecuting attorney to order such person to give answer or produce evidence;".

The only purpose of taking a witness who asserts self incrimination before the Judge is for a determination of the question of whether the claim of privilege is justified or not. Where the Grand Jury is expressly authorized to confer immunity and immunity as broad as the privilege is conferred, the immunity replaces the asserted privilege and there is no necessity for an appearance before the Judge. Witnesses (participants in the same Apalachin meeting) have been properly held in contempt for refusal to answer upon the order of the Commission of Investigation of the State of New York under section 2447 of the Penal Law without any court direction to answer. (*Matter of Commission of Investigation of State of N. Y.* v. *Lombardozzi,* 7 A D 2d 48, affd. 5 N Y 2d 1026.) Appellant cites *People* v. *Breslin* (306 N. Y. 294); *Matter of Knapp* v. *Schweitzer* (2 N Y 2d 913), and *Matter of Spector* v. *Allen* (281 N. Y. 251). In the *Breslin* case, while the court observed in passing that the witness had been directed to answer by the court, that question was not an issue in the case, and section 2447 of the Penal Law was not in that case at all. In the *Knapp* case, while the court issued the direction, whether such was a necessity or not was not an issue. In the *Spector* case it was simply held that a Grand Jury foreman had no authority to issue a "mandate" within the meaning of section 750 of the Judiciary Law. This decision would seem to have no application to a violation of section 600 of the Penal Law, and especially in view of section 2447 of that law. The case of *Brown* v. *United States* (359 U. S. 41) uses language from which appellant gains some comfort, but it involved a Federal statute and is by no means controlling in New York State in a prosecution under section 600 of the Penal Law and where the procedure authorized by section 2447 of the Penal Law was meticuously followed.

Appellant further argues that the immunity granted under section 2447 was not adequate protection in all jurisdictions, including Federal courts, and especially in view of the co-operation between Tioga County authorities and other governmental agencies. The fact remains that the immunity granted was as broad as the State of New York may grant and protects the defendant from any prosecution by any agency of the State of

New York, and was co-extensive with his privilege against self incrimination in New York, and it is well settled that the privilege against self incrimination does not give a witness the right, under such circumstances, to withhold information from New York authorities on the ground that such information might incriminate him elsewhere. (*Matter of Commission of Investigation of State of N. Y.* v. *Lombardozzi,* 7 A D 2d 48, affd. 5 N Y 2d 1026, *supra*; *Matter of Knapp* v. *Schweitzer,* 2 N Y 2d 913, affd. 357 U. S. 371; *Dunham* v. *Ottinger,* 243 N. Y. 423.)

Appellant further asserts that the Grand Jury was without power to act because there was no specific crime charged or established at the Apalachin meeting. While section 245 of the Code of Criminal Procedure empowers a Grand Jury " to inquire into all crimes committed or triable in the county   *   *   *   it is well established by the weight of authority that a grand jury has broad powers of investigation, including the power to investigate whether a crime within its jurisdiction has been committed or not. (*Blair* v. *United States,* 250 U. S. 273; *Hendricks* v. *United States,* 223 U. S. 178; *Hale* v. *Henkel,* 201 U. S. 43; *People* v. *Stern,* 3 N Y 2d 658.)

Appellant further urges that, if a criminal contempt were committed at all, but one contempt, not 17, was committed. A difficult problem is always presented when multiple questions are asked of the same witness, in determining whether a single contempt or multiple contempts result from refusal to answer. The answer to the problem must depend upon the particular facts and circumstances of each case. It is unnecessary to set forth the 17 questions in full here. Suffice to say that 15 of them related in some manner to the Apalachin meeting and 2 of them related to offers of bribes; the questions were by no means the same question rephrased; no two of them could have been answered by a single answer, and they were obviously directed at different and independent avenues of inquiry. In considering the possibility of conspiracy, for instance, it became pertinent for the Grand Jury to know, not only the witness' present acquaintance with Barbara, but his previous meetings and acquaintance and association with others who attended the meeting and the circumstances leading to his own attendance. Of course the questions must relate in some way to the general subject of investigation in order to be relevant at all. But each question sought to establish a separate and independent relevant fact which would not be established by an answer to any other question. Under the broad power of inquiry and investigation vested in a Grand Jury the questions were pertinent,

were separate and independent of each other, and the refusal to answer each was a separate contempt. (*People* v. *Saperstein*, 2 N Y 2d 210) The case of *Yates* v. *United States* (355 U. S. 66) dealt with contempt under a Federal statute and is not binding upon the courts of New York State in a case involving the New York State Penal Law. Moreover, in the *Yates* case the witness made it expressly clear that she would refuse to answer any questions within a particular avenue of inquiry, while in the instant case the witness simply refused to answer each question as it was asked.

We find no error in the admission or rejection of evidence at the trial. Appellant has had a full and fair trial and the evidence is ample to establish beyond a reasonable doubt his willful, contumacious and unlawful refusal to answer legal and proper questions.

The judgment should be affirmed.

BERGAN, J. P., GIBSON, HERLIHY and REYNOLDS, JJ., concur.

Judgment of conviction affirmed.