Shirley R. Leyittah, J.
Thirteen defendants, charged in separate multi-count informations with contempt of a G-rand Jury, move to dismiss the informations. Common issues of law are presented by all defendants, and they and the District Attorney have stipulated that as to those issues the objections presented by any defendant are advanced in behalf of all. Some defendants have presented additional issues applicable to themselves only.
Nine of the defendants have not yet been tried. The defendants Anthony Ferro and Angelo G-rieco were tried before a jury. *754 Ferro was found guilty of 13 counts and not guilty of one. Grieco was found guilty of seven counts. The defendants Louis Avitable and Felix Eessa waived juries and were tried by the court.
The defendants Ferro and Grieco move also to set aside the juries’ verdicts. The motions are entertained as motions to dismiss the informations. The defendants Avitable and Eessa move for judgment of acquittal.
The Fourth April 1968 Grand Jury of New York County was impanelled to inquire into the commission of bribery of labor union representatives, violations of gambling and usury laws, and conspiracy to commit those crimes. Each of the said crimes is enumerated in the Code of Criminal Procedure (§ 619-d) as one to which a grant of immunity from prosecution is applicable under section 619-c. The informations charge in each count that the respective defendant was interrogated and declined to answer under the Fifth Amendment to the United States Constitution upon the grounds (1) that the answer might tend to incriminate or degrade him; (2) that no statute can grant him immunity from prosecution co-extensive with his constitutional privilege against self incrimination; (3) that a New York Grand Jury cannot grant him immunity from possible prosecution by another jurisdiction, such as the Federal Government; (4) that the Assistant District Attorney’s description to him of the scope of the immunity offered to him by the Grand Jury tendered an immunity which was not “transactional”; (5) that any immunity conferred by the Grand Jury will not protect him against civil and administrative penalties, pains and forfeitures and loss of licenses; (6) that he was a target of the investigation; (7) that his attorney was not permitted to be present in the Grand Jury room; (8) that the District Attorney has multiplied a single contempt into plural counts; and (9) that the investigation was based upon illegal methods, such as eavesdropping, and is unfair. In all cases but one the Grand Jury voted formally to confer immunity, and in all cases the witnesses were directed by it to answer. They persisted in their refusals and, after adjournments, so persisted after direction by a Justice of the New York Supreme Court to answer. They are charged in the informations with contempt of the Grand Jury in 1968 (Penal Law, § 215.50, subd. 4).
The defendants assail the constitutionality of the legislation underlying their prosecutions. In effect, they controvert the sufficiency of the informations. They protest that no crime is stated by the charge that one contumes a Grand Jury by refusal to testify in exercise of his constitutional privilege against self incrimination, notwithstanding the purported statutory grant *755 of immunity from prosecution in exchange for the privilege. They argue that no such exchange may constitutionally be imposed upon them, and that no such exchange actually occurs. All immunity statutes, they contend, are inherently unconstitutional, and also impotent to effectuate their stated purpose, since no immunity can possibly be full requittal for the confiscated privilege.
At the outset it might seem that in the three quarters of a century since the decision of Brown v. Walker (161 U. S. 591 [1896]) the abundance of judicial literature on the subject has conclusively established the viability of immunity devices, subject to the condition that they formulate an equation between the immunity conferred and the privilege sacrificed; and that no present quarrel with their legitimacy is possible if they satisfy that equation. Indeed, the defendants’ arguments were articulately and impressively professed by the dissenting Justices in Brown v. Walker (supra). The defendants accordingly argue the minority view. However, fairness requires recognition that other dissents of yesteryear have become today’s majority opinion; and the recency of judicial observation of the minority view invites mention of it. Just this year Mr. Justice Brehhah in his dissent in Piccirillo v. New York (400 U. S. 548) took notice of it (p. 562, n. 7). On its face the Fifth Amendment does not sanction an involuntary barter of the privilege in return for any immunity. However, even in dissent, Justice Brehhah (Justice Marshall concurring) expressly declined to reopen the debate characterizing the inquiry as foreclosed and unnecessary since, in his view, 1 ‘ transactional ’ ’ immunity offers a well-conceived alternative to the privilege. This court at nisi prius may not venture where such others would not tread. To do so would be immodest departure from stare decisis and, indeed, to ‘1 thresh old straw.” (See Hofstadter, The Fifth Amendment and the Immunity Act of 1954, 10 Record of Bar Assn. of New York 453).
But, argue the defendants, assuming arguendo the possibility of a constitutional immunity statute, the one underlying their prosecution is not such a one. Variously, they argue that section 619-c of the Code of Criminal Procedure fails to accord them “transactional” immunity from prosecution, forfeiture, penalty or pain on account of the transaction concerning which they were directed to testify, but only offers “ use ” or “ testimonial ” immunity from subsequent use of the compelled testimony or its fruits in a criminal proceeding; or, alternatively, that it does confer transactional immunity from prosecution by the State but exposes them to Federal prosecution where they are clothed with only use immunity; and that it fails the constitutional test *756 that the breadth of the immunity must be fully coextensive with the scope of the privilege itself.
In its own terms the immunity conferred by section 619-c is defined in subdivision 2 to constitute both transactional immunity from any prosecution, penalty or forfeiture on account of the transaction concerning which testimony or evidence was compelled, plus use immunity in any criminal proceeding against the witness. The Court of Appeals has held the immunity to be transactional (Matter of Gold v. Menna, 25 N Y 2d 475).
The controversy nonetheless importunes because of judicial swithering in the interpretation of the Fifth Amendment privilege since Counselman v. Hitchcock (142 U. S. 547 [1892]). Counselman, at its minimum, held expressly that a statute is unconstitutional which attempts to supplant the privilege with immunity only from the use of the actual testimony, but omits to grant immunity from employment of the ‘ ‘ fruits ’ ’ or leads of that testimony. But the opinion went further to say that in order to be constitutional the statute must confer transactional immunity. Disagreement whether that pronouncement of transactional immunity is to be interpreted as part of the holding of the decision, or only as dictum, has been the source of recent polemics. Decisions of the Supreme Court subsequent to Counselman regarded it as the holding; Brown v. Walker (supra) had applied that interpretation to new Federal statutes, which became the paradigm for State statutes, including New York’s.
In 1964 the Supreme Court simultaneously decided Malloy v. Hogan (378 U. S. 1) and Murphy v. Waterfront Comm. (378 U. S. 52 [1964]) both holding that the Fifth Amendment privilege against self incrimination is obligatory upon the States, the Fifth Amendment being potentiated by the Fourteenth, and that the States may supplant it only with the same immunity against State prosecution that the Federal Government must grant against Federal prosecutions. Murphy went further. It measured that immunity to be use immunity. The court followed that measure in Gardner v. Broderick (392 U. S. 273). The contrary teaching of Counselman v. Hitchcock (supra) appeared to be reduced to dictum and not followed.
Our Court of Appeals then pursued the example of Murphy and ruled in People v. La Bello and Piccirillo (24 N Y 2d 598) —'that notwithstanding the provisions of section 619-c — that the New York Legislature had intended to supply no greater immunity than it was constitutionally obligated to provide; and: that since it was obligated to grant only use immunity, that was all the immunity that the statute does in fact confer, following the Supreme Court’s parameter in Murphy.
*757 The United States Supreme Court thereupon granted certiorari (397 U. S. 933). It thereby raised the possibility that it would overrule itself and restore the transactional immunity standard of Counselman. Before the Supreme Court rendered any decision in Piccirillo, the New York Court of Appeals supervened and itself expressly overruled Piccirillo at a time when the latter was sub judice in the Supreme Court. It did so in Matter of Gold v. Menna (25 N Y 2d 475, sufra) holding that the New York statute does grant transactional immunity, contrary to its prior decision in Piccirillo. The Supreme Court reacted by dismissing its certiorari in Piccirillo as improvidently granted, in an opinion in which four Justices dissented. (400 U. S. 548, sufra.) The majority of the court announced that its purpose in earlier granting certiorari had been ‘ ‘ to resolve the imfortant question whether it is necessary to accord 1 transactional ’ immunity, see Counselman v. Hitchcock, 142 U. S. 547 (1892), to compel a witness to give testimony before a state grand jury over his claim of the privilege against self-incrimination, or whether mere ‘ use ’ immunity suffices to that end, see, e.g., Murphy v. Waterfront Comm., 378 U. S. 52 (1964) ; Uniformed Sanitation Men Assn. v. Commissioner of Sanitation of the City of New York, 426 F. 2d 619 (CA 2 1970).” (emphasis supplied).
Even the majority, characterized the issue as an “ important question” for the court “to resolve ”. And four Justices in dissent unequivocally espoused transactional immunity as requisite to replace the privilege. This may encourage those of kindred persuasions to aspire for future reversion by the Supreme Court to the learning and wisdom of Counselman’s transactional immunity requirement. For, as Mr. Justice Hofstadter of our State Supreme Court noted, 1 ‘ A right effective only when not needed is scarcely a right at all! ” Nonetheless, the United States Supreme Court’s current definitive position has not yet progressed beyond Murfhy. New York’s statute meets the Murfhy test.
Moreover, assuming that the defendants were entitled to transactional immunity in exchange for their privilege of silence, the frailty of their objection in the instant cases, is that the New York statute tendered such immunity. The statutory offer extends transactional immunity not only from prosecution but also from any penalty or forfeiture on account of the transaction (Code Crim. Pro., § 619-c, subd. 2). The statute tendered at least as much as the State is indebted to pay for expropriation of the privilege. It is no defense that in the defendants’ minds they are uncertain over which specie of immunity they shall be entitled to if the Federal Government should also prosecute them for the same transaction; for, whatever they are enti *758 tied to receive from the Federal Government, they shall, in fact, receive from it (albeit they may have to receive it from the Supreme Court). New York’s statute is not unconstitutional on the possible ground that the defendants ’ Federal rights may be narrower than their New York rights.
The defendants further object that, whether or not the statute tenders transactional immunity, the Grand Jury and the Assistant District Attorneys abridged the statutory tender by verbally offering them only use immunity. This result, they say, derives from the Assistant District Attorneys’ descriptions or misdescriptions to them of the scope of the immunity voted by the Grand Jury. It is true that if a prosecutor articulates an offer of immunity narrower than transactional he enervates the statutory tender and the defendants are justified in adhering to their privilege of silence free of liability for contempt (People v. Masiello, 28 N Y 2d 287). The Grand Jury minutes of the interrogation of the defendants Ferro, Grieco, Avitable and Ressa are in evidence. The court finds that to them the Assistant District Attorneys’ characterizations of the scope of the immunity constituted descriptions of transactional immunity, or transactional coupled with use immunity. The Masiello test is satisfied. Their motions to dismiss on the ground of insufficiency or misdescriptions of the immunity are denied. As to the other defendants who have not yet been tried, the Grand Jury minutes have not been exhibited to the court or to the defendants. On such an incomplete record the court is unable to test that objection. Accordingly, the motions of those defendants to dismiss the informations on those grounds must be denied without prejudice to renewal upon a record including the material extracts of the minutes.
The defendants also decry the statute for failure to immunize them against use of the testimony or evidence against them in civil actions for damages, including punitive damages, or other civil remedies, or in licensing proceedings before governmental authorities. The privilege against self incrimination has never constituted a privilege against self-subjection to civil liability in the administration of justice between private citizens. Absent self incrimination, a defendant in a civil action has always been compelled to testify against himself (CPLR 4512, 3101, subd. [a], par. [1]; 2308, subd. [a]). While in a civil action between private parties a witness may not be compelled to incriminate himself (CPLR 4501) the objective of the privilege is not to shield him from civil judgment (id.) In a civil proceeding to which the State is a party, if the defendant is immunized (under Code Grim. Pro., § 619-c, subd. 3, par. [b]) at the request of the *759 Attorney-General, he may be compelled to testify or give evidence upon which civil judgment may be based. Even punitive damages in civil actions are civil recoveries, not criminal penalties. So too, applicants for license have always been compelled to testify against themselves in order to maintain the application, obtain the license, or retain it. Sworn personal information providing grounds for denial of the application has always been exactible in such applications. Nor might the information be withheld upon the ground of self incrimination. Its avoidance is realized by the choice to abstain from the application. No right is thereby abrogated, a license not constituting a right.
Thus, the challenges to the constitutionality of the immunity statute must fail, and it follows that, the Fifth Amendment privilege having been supplanted, the defendants were obliged to testify as interrogated. Nor are they excused because they may be targets or because their attorneys were not permitted in the Grand Jury room during the interrogation (People v. Ianniello, 21 N Y 2d 418, 423).
The defendant Louis Avitable moves to dismiss the information against him on the additional ground that the Grand Jury did not vote formally to grant him immunity. On the face of the statute, its grant of immunity appears to ensue automatically from a command by the Grand Jury to testify or produce evidence, followed by the witness ’ compliance; and a formal vote of immunity might appear redundant. However, in a not unrelated context the Court of Appeals has interpreted the statute to be not self-executing (People v. Masiello, supra ; People v. De Feo, 308 N. Y. 595, 604). The immunity must be affirmatively bestowed. Nonetheless, the court finds that the record does not support the defendant Avitable’s objection that the Grand Jury failed to indicate an active award of immunity. Bather the court finds that the Grand Jury’s manifest conduct was tantamount to a formal vote of immunity. The defendant appeared before the Grand Jury four times. On the first three appearances he was granted adjournments without testifying. On the occasion of each adjournment the Assistant District Attorney advised him in the presence of the Grand Jury that if he claimed his privilege the Grand Jury would deliberate or decide whether to offer him immunity, or would, in fact, offer it, in which case it would direct him to testify. The defendant informed the prosecutor that he was experienced in the meaning of immunity. It appears that the Grand Jury, the prosecutor and the defendant all considered that a command by the Grand Jury to testify would itself constitute an active expression of the delivery of immu *760 nity. On the defendant’s fourth appearance he claimed his privilege and the Grand Jury did direct him to answer. When he persisted in his refusal the assistant prosecutor repeated his advice that by compliance with that instruction he would be immunized. (Albeit this time he spoke of use immunity, it had previously been clearly described to the defendant as transactional plus use immunity.) In these special circumstances — perhaps sui generis — the court considers the Grand Jury to have signified to the defendant its collective decision to grant him amnesty. Avitable’s motion on those grounds is accordingly denied. So, too, is his motion based upon the additional assertion that the questions lacked pertinency.
The court finds that the questions posed to all of the defendants who were tried (Ferro, Grieco, Avitable and Ressa) were relevant to the scope of the Grand Jury inquiry, and the defendants ’ refusal to testify in response to them is sufficient to state the crime, and support the charge of contempt as alleged in the information. With regard to the other defendants, as already noted, the Grand Jury minutes have not been exhibited to the court; since the record as to this point is thus incomplete the motions of those defendants to dismiss the information on the ground of lack of pertinency must be denied without prejudice to renewal upon a proper record.
Accordingly, the motions of all defendants to dismiss the information on constitutional grounds are denied. However, the motions of the defendants Marrone, Pisicano, Massi, Delia, Mancuso, Cuomo, Ciolli, Totaro and Maiorino are denied without prejudice to renewal upon the possible grounds that the prosecutor may have verbally described an insufficient immunity and that the questions posed may not have been relevant to the scope of the Grand Jury inquiry. The motions of the defendants Grieco and Avitable to dismiss the informations on grounds particular to them are denied. The motions of the defendants Ferro and Grieco to set aside the petit juries’ verdicts of conviction are denied.
Upon all of the evidence the court denies the motions of the defendants Avitable and Ressa for judgment of acquittal and finds them guilty of all counts of the respective informations.
The objections of the defendants who have been tried that they may be prosecuted for or convicted of no more than one count of contempt (People v. Chestnut, 26 N Y 2d 481) will be resolved upon sentence by provision that no such defendant shall receive more punishment for conviction of plural counts than he would receive for conviction of only one count and also including a provision, in the event of imposition of terms of imprisonment, *761 for concurrency thereof. The same objections by the defendants who have not yet been tried are denied without prejudice to renewal upon trial.
All counsel are directed to appear before the court on June 15, 1971 to set, as to defendants Ferro, G-rieco, Avitable and Bessa, a date for sentence, and as to the other defendants, a date for trial.