OPINION OF THE COURT
Milton L. Williams, J.
Defendant and several corporations with which he was closely involved were the subjects of an investigation conducted by the New York State Attorney-General pursuant to powers granted them by the Martin Act (General Business Law, art 23-A). The Martin Act is the New York State legislation which proscribes fraudulent practices with respect to securities; it gives the State Attorney-General powers of subpoena, to invoke criminal and civil sanctions and to grant immunity in investigatory proceedings pursuant to the act, among others.
During the course of this investigation, defendant was subpoenaed personally, allegedly along with some of his personal records, as well as the books and records of the several corporations and businesses with which he was associated. The subpoenas summoned defendant to appear at the Attorney-General’s office for proceedings before a Special Deputy Attorney-General. Defendant appeared on four occasions: February 23, 1979, March 13, 1979, April *945 25,1979, and June 6,1979. The last three dates he appeared with counsel.
The information elicited at these proceedings was submitted to a New York County Grand Jury, after which was filed a 13-count indictment charging defendant with one count each of scheme to defraud in the first degree; perjury in the first degree; and grand larceny in the second degree. The remaining 10 counts were various violations of article 23-A of the General Business Law.
Defendant is moving here to: dismiss the indictment on the grounds that defendant had immunity (1) emanating from the Martin Act proceedings and (2) emanating from the Grand Jury with respect to the offenses charged, pursuant to GPL 210.20 (subd 1, par [d]); dismiss the fourth through eighth and thirteenth counts on the ground that they are time barred by the applicable Statute of Limitations, pursuant to GPL 210.20 (subd 1, par [f]); inspect and dismiss as to the perjury count on the grounds that the evidence was not legally sufficient to establish defendant’s commission of the crime charged (for several reasons) and that the Special Deputy Attorney-General did not properly charge the Grand Jury as to the crime charged, pursuant to GPL 210.20 (subd 1, par [c]). Each aspect of defendant’s motion will be discussed separately.
IMMUNITY UNDER THE MARTIN ACT
Defendant is specifically alleging here that at the March 13, 1979 proceeding, he was compelled to be a witness against himself under threat of criminal prosecution, contrary to his State and Federal constitutional rights and that as a result, the immunity provision under the Martin Act was triggered, granting him immunity from any prosecution based upon the evidence adduced at the Martin Act proceedings.
The immunity provision under the Martin Act (General Business Law, § 359) reads as follows:
“Immunity
“Upon any investigation before the attorney-general or his deputy or other officer designated by him, or in any criminal proceeding before any court or grand jury, pursuant to or for a violation of any of the provisions of this *946 article, the attorney-general, his deputy or other officer designated by him, or the court or grand jury, may confer immunity in accordance with the provisions of section 50.20 or 190.40 of the criminal procedure law.” (Italics supplied.)
In this context, the applicable provisions of the Criminal Procedure Law are CPL 50.10 and 50.20 which read in relevant part as follows:
“50.10 Compulsion of evidence by offer of immunity; definitions of terms
“The following definitions are applicable to this article:
“1. ‘Immunity.’ A person who has been a witness in a legal proceeding, and who cannot, except as otherwise provided in this subdivision, be convicted Of any offense or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he gave evidence therein, possesses ‘immunity’ from any such conviction, penalty or forfeiture. A person who possesses such immunity may nevertheless be convicted of perjury as a result of having given false testimony in such legal proceeding, and may be convicted of or adjudged in contempt as a result of having, contumaciously refused to give evidence therein.
“2. ‘Legal proceeding’ means a proceeding in or before any court or grand jury, or before any body, agency or person authorized by law to conduct the same and to administer the oath or to cause it to be administered.
“3. ‘Give evidence’ means to testify or produce physical evidence.
“50.20 Compulsion of evidence by offer of immunity
“1. Any witness in a legal proceeding, other than a grand jury proceeding, may refuse to give evidence requested of him on the ground that it may tend to incriminate him and he may not, except as provided in subdivision two, be compelled to give such evidence.
“2. Such a witness may be compelled to give evidence in such a proceeding notwithstanding an assertion of his privilege against self-incrimination if:
“(a) The proceeding is one in which, by express provision of statute, a person conducting or connected therewith *947 is declared a competent authority to confer immunity upon witnesses therein; and
“(b) Such competent authority (i) orders such witness to give the requested evidence notwithstanding his assertion of his privilege against self-incrimination, and (ii) advises him that upon so doing he will receive immunity.
“3. A witness who is ordered to give evidence pursuant to subdivision two and who complies with such order receives immunity. Such witness is not deprived of such immunity because such competent authority did not comply with statutory provisions requiring notice to a specified public servant of intention to confer immunity.”
The statutory provisions cited above are clear that the conferring of immunity in a proceeding other than a Grand Jury in the State of New York involves a clearly defined three-step procedure. The statutory prerequisite to this procedure is that the “competent authority” involved with the proceeding has express statutory authority to confer immunity — as the Assistant Attorney-General is granted by section 359 of article 23-A of the General Business Law.
The first step in the immunity conferral sequence is that the witness must claim his Fifth Amendment privilege in response to a query made of him at the proceeding. The second step is that the “competent authority” order the witness to give the requested information notwithstanding his assertion of his privilege, advising him that upon doing so, he will receive immunity. The third step is that the witness complies with such order, thereby receiving immunity.
The statute is clear that should a witness claim his privilege and the “competent authority” chooses not to offer immunity, the witness, barring any waiver of his privilege, need not answer the query nor may he be coerced or forced to answer involuntarily.
The particular question that the instant case presents is what should the outcome be when the three-step procedure is inadvertently followed except that the second step is flawed; i.e., the authority orders the witness to answer the question but instead of seeking to induce compliance by offering immunity, as per the statute, induces compliance by the coercive threat of criminal sanctions? It is my opinion *948 that one need not be schooled in the subtleties of legal reasoning to arrive at the correct outcome here: the Special Deputy Attorney-General flagrantly violated the witness’ rights, and immunity resulted.*
The following is an excerpt from the transcript of proceedings held at the Attorney-General’s office on March 13, 1979:
“EXAMINATION BY MR. TIPPERMAN:
“Q Have you ever been known by any other name whatsoever?
“A I have trade names that I used in the business, Yes.
“Q What trade names and for what business and during what period of time?
“A For advertising purposes only as a co-name to depict which ad the calls come in. I have used Roger Dextor.
“Q Any others?
“A That’s about it, really.
“Q And for what advertisement did you use that?
“A Several advertisements pertaining to different matters.
“Q When did you—
“MR. BROOKMAN: This alias was not used as I’m led to understand for the Book Club for the Martial Arts, Incorporated which is the subject of this hearing.
“MR. TIPPERMAN: Mr. Brookman, I made the ground rules quite clear at the outset of this hearing.
“Q When did you use this trade name, Roger Dextor?
“MR. BROOKMAN: Decline to answer.
“A I decline.
“Q Excuse me, Mr. Linick.
“MR. BROOKMAN: He declines to answer.
“Q On what grounds, Mr. Linick?
“A Fifth Amendment.
“Q Have you ever been known by any other name?
“A No.
*949 “Q Mr. Linick, you just told me you used the name, Roger Linick. You, therefore, have testified to a use of your trade name, namely Roger Dextor. You already testified about this area, and I’m asking you a further question with respect to this area of the law, and that is when you use the name, Roger Dextor. When did you use the name, Roger Dextor?
“MR. BROOKMAN: Decline.
“A I decline.
“MR. TIPPERMAN: I advise you, sir, that your continued refusal to answer that question may subject you to criminal penalties under Section 352 of the General Business Law and other statutes of this State. Do you so understand?
“THE WITNESS: Yes.
“Q Have you ever been known by any other name other than Roger Dextor?
“A No.
“Q Have you ever used any other trade names?
“A I don’t understand.
“Q You used the trade name, sir. Have you ever used any trade name besides Roger Dextor?
“A Not that I can think of.
“Q Have you ever published anything under any names other than your own and Roger Dextor?
“A Sure.
“Q Under what names?
“A This has nothing to do with Book Club for the Martial Arts.
“Q Have you ever done it, sir?
“MR. BROOKMAN: Decline
“A Decline again; Fifth Amendment.
“Q Have you ever used any other name in connection with the Book Club for the Martial Arts?
“A Not to my knowledge.”
This excerpt is indicative of the Special Deputy’s over-all manner and tone, throughout the proceeding, in instances where defendant Linick asserted his privilege or where defendant’s counsel for the proceeding, Mr. Brookman, attempted, quite properly, to intervene in his client’s behalf.
Even a cursory examination of the colloquy makes sev *950 eral facts apparent. First, it is clear that, read in context, the witness’ “declining to answer” was in each instance upon Fifth Amendment grounds. Second, the language that the assistant uses in warning the witness is coercive in nature, threatening the use of criminal sanctions should the witness refuse to answer. He uses this language without offering immunity before or after he did so. Note that the witness answers the questions after the threats.
Where a witness asserts his Fifth Amendment privilege at a legal proceeding, is ordered by a “competent authority” to give the requested information notwithstanding his assertion, is threatened with criminal sanctions if he does not, and he responds by supplying the information requested, immunity attaches to such witness for any evidence given under such coercion (People v Kozer, 33 AD2d 617). This outcome flows logically and fairly from such a situation. Absent waiver, a witness before a “legal proceeding” is protected by either his Fifth Amendment privilege or immunity (People v Riela, 14 Misc 2d 213, affd 9 AD2d 481, revd on other grounds 7 NY2d 571; People ex rel. Taylor v Forbes, 143 NY 219).
The People would read subdivision 4 of section 352 of the General Business Law in this context as authorizing the use of “warnings” of contempt prosecution for refusal to answer where a witness asserts his privilege. The cases which the People cite to support this proposition involve situations where a defendant was appearing before a Grand Jury with his automatic transactional immunity, refused to answer questions and was issued analogous warnings. That situation is easily distinguishable from the one at bar, where defendant had not been granted" immunity and his alleged “refusal” was simply his assertion of the privilege. In the situation at bar, then, only where the witness knows that he has immunity and subsequently persists in refusing to answer for any reason can he be held liable to the sanctions of a provision like article 23-A (§ 352, subd 4) of the General Business Law. Surely subdivision 4 of section 352 must be read in a manner consistent with so fundamental a doctrine as the privilege against self incrimination, which is safeguarded in section 359 of the same article. Hence the repeated warnings not only tended to harass the defendant *951 (People v Rappaport, 47 NY2d 308), but also reinforce the notion that the assistant’s conduct precipitated immunity.
The People make two corollary arguments in which this court finds little merit. They argue that defendant was represented by counsel, therefore his rights were safeguarded at the proceeding, and that defendant in fact waived his privilege by giving a partial answer, in which case, by law, he could not refuse to answer follow-up questions on the same subject by asserting his privilege.
Defendant Linick was accompanied by counsel to the proceedings. However, the Assistant Attorney-General’s behavior toward counsel, as reflected in the transcript, was of such a nature as to render his presence superfluous. Counsel was silenced and interrupted, etc., repeatedly during the proceedings. As a result, it is somewhat ludicrous for the People to point to the presence of counsel as having any impact on the determination of this issue.
The argument as to the witness defendant’s waiving his privilege by partially answering questions to which he subsequently asserted his privilege is also to no effect. Initially it must be stated that the assistant made these queries in a somewhat misleading way (contextually). Apparently the subject of the particular proceeding was limited to an enterprise which was not related to the questions the assistant asked (this seemed to be defendant and his attorney’s understanding; see transcript excerpts, supra). Although the witness answered the first of these questions in a minimal manner, as soon as he and his attorney divined the assistant’s tactic, the privilege was asserted. Certainly the vaunted privilege against self incrimination protected by Constitutions and statutes should not be abrogated upon so paltry a showing.
Having determined, then, that immunity pursuant to CPL 50.20 resulted as a consequence of the manner in which the Martin Act proceeding was conducted, the remaining question on this issue is the scope of the immunity. This court is of the opinion that the immunity which resulted was transactional (CPL 50.10, subd 1; Matter of Gold v Menna, 25 NY2d 475, 481 [decided under predecessor statute with identical provisions as to scope of immunity once granted]). Hence, defendant cannot be prosecuted for *952 any crime which his testimony disclosed or for any crimes that might be subsequently discovered as a result of any leads or clues which his testimony may have provided (People v Ferro, 66 Misc 2d 752; Matter of Gold v Menna, supra).
Immunity, in this case, attached at the very first substantive Martin Act proceeding held, the one on March 13, 1979. At this proceeding, defendant disclosed information the ramifications of which permeate the Assistant Attorney-General’s entire case. The names and addresses of most of prosecution’s witnesses were supplied, numerous additional leads, etc. For this reason, the court is of the opinion that the indictment must be dismissed and the motion granted pursuant to CPL 210.20 (subd 1, par [d]) and 210.45 (subd 4, par [c]), with the exception of the perjury count.
GRAND JURY IMMUNITY AND STATUTE OF LIMITATIONS
The granting of the motion to dismiss the indictment as a result of CPL 50.20 immunity attaching in the Martin Act investigatory proceedings obviates any discussion of these grounds for dismissal. Suffice to say that in the opinion of this court, neither line of argument offered a basis for dismissal.
PERJURY
Defendant moved to inspect the Grand Jury minutes and dismiss the perjury count on several grounds. This court granted the motion to inspect pursuant to CPL 210.30 (subd 3) and inspected the minutes. The motion to dismiss is denied as to each ground pursuant to well-settled principles of law.

 (People v Kozer, 33 AD2d 617 [decided under Code Grim Pro, § 619-c, which provisions in this regard are substantively the same] ; see, also, Denzer, Practice Commentary, McKinney’s Cons Laws of NY, Book 11A, GPL 50.20, pp 150-151.)