Jasen, J.
The primary issue in this case is whether a witness gains an immunity from prosecution for murder—even though such crime is not one of the offenses specified in the statute for which immunity may be conferred—where the Grand Jury is carrying on an investigation related to conspiracy to commit murder and other crimes.
The Fourth Additional Kings County Grand Jury of May, 1968 was impaneled to conduct an investigation into a conspiracy to commit murder and other crimes in the County of Kings in connection with an effort by unnamed persons to succeed one Joseph Bonanno as head of an organized crime syndicate.
On November 7, 1968, the appellants, having been previously subpoenaed, appeared before the Grand Jury and refused to answer any questions on the ground that their answers might be self incriminatory. The District Attorney, believing that the appellants could give useful evidence bearing on the conspiracy to commit murder and could identify some or all of the co-conspirators and perpetrators thereof, expressly asked the Grand Jury to grant each appellant immunity pursuant to sections 619-c and 619-d of the Code of Criminal Procedure. Thereafter, on the same date, November 7, 1968, appellants were *479 granted immunity. However, they still refused to answer any questions. When they persisted in their refusal to answer, the District Attorney, by order to show cause, moved in Supreme Court, Kings County, for an order directing each of the appellants to return before the Grand Jury and answer all legal and proper questions propounded; or, in the event of a refusal to obey such direction, to show cause why each should not be punished for contempt pursuant to section 750 of the Judiciary Law.
Subsequently, in March, 1969, after appearing with counsel, the appellants were ordered by the court to return before the Grand Jury and answer the questions propounded. The witnesses once again refused to answer, and thereupon were adjudged in contempt of court in violation of section 750 of the Judiciary Law. Before being sentenced, they were given an opportunity to purge their contempt, which they refused.
Each appellant was sentenced to the Civil Prison of the City of New York for a term of 30 days and fined $250 (or an additional 30 days in default of payment) with the exception of appellant Menna who only received a 30-day prison term. These appeals have been consolidated as they involve identical questions of law.
On this appeal appellants’ primary argument is that the Grand Jury had no power to grant immunity in the pending investigation because the investigation centered on a series of murders and assaults, for which crimes the Grand Jury has no statutory authority to grant immunity.
Section 619-d (subd. 2) of the Code of Criminal Procedure denominates, by reference to specific sections of the Penal Law, the offenses for which a Grand Jury may confer immunity, and murder and assault are not included. However, the statute does specifically provide for the conferring of immunity in the case of a Grand Jury investigation into a conspiracy to commit murder. (Code Crim. Pro., § 619-d, subd. 2; Penal Law, § 105.15.)
There is no doubt that the investigation here focused on such a conspiracy. The record discloses that the Grand Jury was investigating a series of incidents following, and possibly related to, the kidnapping of Joseph Bonanno on October 20, 1964, such as a shooting on Troutman ¡Street, in Brooklyn, on Janu *480 ary 28, 1966; the .shooting of Frank Mari, in Brooklyn, in July, 1966; the murder of Thomas -and James D’Angelo and Frank Telleri, in Queens, on November 10, 1967; the shooting of Peter Crociata, in Brooklyn, on March 4, 1968; the murder of Sam Perrone, in Brooklyn, on March 11, 1968; the murder of Michael Console, in Queens, on April 1, 1968; the shooting of William Gonzalez, in The Bronx, on April 5, 1968; the shooting of Francisco Crociata, in Brooklyn, on April 17, 1968; the murder of Thomas Zummo, in Queens, on February 5, 1969; and other related crimes.
In addition to the afore-mentioned murders, the Grand Jury was also investigating a number of shootings and assaults where the victims survived. Indeed, in those instances, the crime of conspiracy to commit murder may well have been perpetrated, although the completed crime of murder was not.
It is certainly proper and within the power of a Grand Jury to investigate these series of killings and assaults to determine whether they were committed in furtherance of a conspiracy to assume control of an organized crime syndicate in Kings County. Clearly, the statutory purpose of granting immunity to one person so as to gain evidence against others mandates that the Grand Jury be allowed to grant immunity here.
The fact that a crime, such as murder, which is not included in the statute may be mentioned by a witness testifying with immunity, should not change this conclusion. To be sure, there is always the possibility that in any Grand Jury investigation where immunity is granted, crimes not specifically enumerated in the statute may be revealed. However, to allow this fact to repeatedly void the grant of immunity would be illogical and contrary to the intent of the Legislature.
In Matter of Grand Jury [Cioffi], (8 N Y 2d 220 [1960]), we rejected a similar contention, stating at pages 225-226: “ [A]ppellants say that they could not be compelled to testify under these circumstances because the Grand Jury was investigating crimes * * * which are not among the crimes as to which the Penal Law authorizes an express grant of immunity. The answer to that is that * * * appellants would have gotten complete immunity as to any and all crimes to which their testimony related.”
*481 As a .subsidiary issue, appellants maintain that the immunity granted by the Grand Jury is limited and is, therefore, not coextensive with their privilege against self incrimination as required by Counselman v. Hitchcock (142 U. S. 547), where the court declared that ‘ ‘ a statutory enactment, to be valid, must afford absolute immunity against future prosecution for the offence to which the question relates ” (p. 586). Assuming, because of the views expressed in Gardner v. Broderick (392 U. S. 273) and Murphy v. Waterfront Comm. (378 U. S. 52) that this may no longer be so, resolution of the issue would not affect the result under the statutes of this State, For, despite the statements to the contrary in People v. La Bello (24 N Y 2d 598), the applicable immunity statute provides, in so many words, that a person, upon whom immunity is conferred, ‘‘ shall not be prosecuted or subjected to any penalty * * * for or on account of any transaction, matter or thing concerning which * * * he gave answer or produced evidence ” (Code Crim, Pro,, § 619-c, subd. 2). The court has, indeed, expressly recognized that this Code provision and its identical provision in the former Penal Law (§ 2447), granted a transactional immunity from prosecution for any crime revealed by a witness’ testimony before a Grand Jury, (See People v. Ianniello, 21 N Y 2d 418, 425, cert. den. 393 U. S, 827; People v. Tomasello, 21 N Y 2d 143, 149; see, also, 1942 Report of N. Y. Law Rev. Comm., pp. 386-390; N. Y, Legis. Doc,, 1942, No. 65 [I], pp. 50-54.) We now reaffirm this interpretation and hold that to whatever extent People v. La Bello (24 N Y 2d 598, supra) is inconsistent with this conclusion, it is overruled,[1]
In the present case, therefore, the appellants obtained an immunity from prosecution for any and all crimes to which their testimony might relate and, accordingly, they could not assert the privilege against self incrimination and refuse to *482 testify. It follows that the orders adjudging them in contempt were eminently proper.
Also before us is the question of whether the appellants were entitled to a hearing on the relevancy of the questions asked them since the trial court ruled the questions asked were relevant without conducting a formal hearing. In Matter of Koota v. Colombo (17 N Y 2d 147 [1966], cert. den. 384 U. S. 1001), we held that the relevancy of the questions need not be conclusively established and only an intelligent estimate of relevancy need be made. (See, also, Matter of Spector v. Allen, 281 N. Y. 251 [1939].)
Applying this test to the record before us, there can be no doubt that there is such an element of relevancy here. Appellants were asked if they knew the murder victims or Joe Bonanno. Since both the series of .slayings and the conspiracy to succeed Bonanno were the subject of investigation by the Grand Jury, the Colombo standard has been clearly met.
The other contentions of the appellants are equally without merit. The question as to whether appellants are targets of this investigation is immaterial since this court has stated many times that a person has no right to remain silent after a grant of immunity even if one is the target of the investigation. (People v. La Bello, supra; People v. Ianniello, supra; People v. Breslin, 306 N. Y. 294 [1954],) The appellants’ argument that they could not be punished for contempt because it was not committed in the immediate view of the court is also specious. Section 750 (subd. 3) of the Judiciary Law allows a court to hold a person in contempt for disobedience of its lawful mandate (i.e., to testify before the Grand Jury) and section 750 (subd. 5) allows punishment for failure to answer any legal and proper interrogatories.
Finally, appellants complain that they were illegally before the Grand Jury since they were not served with a subpoena to appear on the specific date on which they were held in contempt (although a subpoena had been issued earlier) as was required in Matter of Spector v. Allen (supra).
Appellants’ reliance on Matter of Spector v. Allen (supra) is misplaced. Spector required a subpoena to be served because the court was concerned that a clear formal command to testify was not given under the facts of that case. Here the appellants *483 were in fact served with a subpoena to appear before the Grand Jury. After refusing to answer questions put to them, they were granted immunity and again refused to answer questions. The court then formally ordered appellants to testify. After discussion with counsel, they informed the court that they would not answer the questions, at which time the court held them in contempt. We find that the appellants were afforded ample notice of the proceedings and fully apprised of the nature of the Grand Jury inquiry. Their fundamental rights were not violated.
Accordingly, the orders of the Appellate Division should be affirmed.
Chief Judge Furo and Judges Burke, Scileppi, Bergan, Brbitel and Gibson concur.
In each case: Order affirmed, without costs.

, This does not, however, mean that La Bello was incorrectly decided. On the contrary, the decision actually rested on the fact that the defendants in that case, according to the majority view, were not prosecuted—in the language of the statute — “for or on account of any transaction, matter or thing concerning which * * * [they] gave answer or produced evidence ” (former Penal Law, § 2447, now Code Crim. Pro,, § 619-e, subd. 2); in other words, they gave no testimony which related or pertained to the offense for which they were prosecuted and of which they were convicted.