■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RALPH PARDO, Appellant. — Judgment, Supreme Court, Bronx County, rendered on May 22, 1978, convicting defendant, after trial by jury, of promoting gambling in the second degree and possession of gambling records in the second degree, and imposing a fine of $500 or to serve a 60-day jail term, unanimously reversed, on the law, the judgment of conviction vacated and the indictment dismissed. Judgment, Supreme Court, Bronx County, rendered on August 16, 1978, convicting defendant, after a nonjury trial, of possession of gambling records in the second degree and imposing a fine of $100 or to serve a 60-day jail term, unanimously reversed, on the law, the judgment of conviction vacated and the indictment dismissed. The sole question presented for review is whether defendant should have been granted immunity by reason of his testimony before a Grand Jury. We have concluded that the testimony of the defendant obtained at this proceeding "relates" to crimes for which he was subsequently convicted *(Matter of Gold v Menna,* 25 NY2d 475) and immunity should have been granted. On December 13, 1976, and January 10, 1977, police officers executed search warrants for two Bronx premises, 835 East 156th Street and 1344A Edward L. Grant Highway, premises occupied by the "Bus Stop Candy Store". On these occasions defendant was found to be in possession of a substantial number of illegal gambling records. Two separate indictments were filed on March 28, 1977, charging defendant with the commission of various crimes relating to the above incidents. In June, 1977, defendant was subpoenaed by the Special State Prosecutor to testify before a Grand Jury which was investigating allegations of police bribery and corruption. Defendant, after being advised that he would receive transactional immunity, admitted that he was "now" a gambler: "Q. Mr. Pardo, how are you employed, sir? A. Well, right now, I gamble. Q. What do you mean by gamble? You bet? A. Collect numbers. Q. You collect numbers? A. Right. Q. Are you self-employed or do you work for someone? A. Well, I would say self-employed. Q. And where do you work out of? A. Well, out of 156th Street, 835 156th Street." This portion of defendant's testimony could arguably support the conclusion that the matters referred to concern defendant's present employment and does not relate back to the line of work defendant was engaged in at the time of his arrest. However, when the other relevant portions of defendant's Grand Jury testimony are considered in conjunction with the above, it becomes evident that defendant is testifying as to one single continuous activity — the conduct of an illegal gambling operation. In the second relevant portion of the testimony, defendant admitted that he had engaged in a gambling operation with one Walter Secor "throughout the years": "Q. Now do you know a person by the name of Walter Secor? A. I do. Q. How do you know Mr. Secor? A. Through business transactions. I knew him as a friend throughout the years. Q. And when you say through business transactions what business transactions are you referring to? A. Numbers. Q. Numbers? A. Yes. Q. You have some sort of association with him? A. I would give him numbers. Q. Excuse me? A. I would give him numbers. I would pass them on to him, something I couldn't cover. Q.

Layoff? A. Right." The defendant also admitted that he ran a "single-action" · business with John Schiffman "years ago": "Q. Again, how do you know Mr. Schiffman? A. I worked with John Schiffman years ago. He was a partner of mine. Q. In connection with your numbers business? A. Policy, single action. Q. Single action? A. Right." In addition, defendant admitted that he conducted "business" in 1976 and 1977, with John Fusilli at Tom's Tavern: "Q. In 1975 you would go there about every day? A. Yes, right. Q. Why would you go there every day in 1975? A. We had business together. Q. In 1976, did that business relationship change? A. Well, in what way — yes, it did. Q. In what way did it change? A. Well, I didn't have too much business to do with it. Q. So, you didn't go as often? A. No. Q. On the times you did go, did you go there for business or pleasure? A. Business, once in a while. Q. How about 1977? How often were you there these last six months? A. Not too much. Q. Once a week, twice a week, once every two weeks? A. I'd say once. Q. Once every two weeks? A. Could be. Q. I'm not trying to get you down to an exact number, I'm trying to get you down to a rough approximation. Would you go there once or twice a month? A. Oh, yes, I would say so." Although the initial questions were answered in the present tense, answers to subsequent questions demonstrate that defendant was actively engaged, for a lengthy period, in illegal gambling activity. It cannot be fairly said that defendant's convictions for gambling offenses are unrelated to this testimony. Accordingly, the responses of defendant to this line of questioning serve to grant him transactional immunity and bar the present prosecution *(People v McFarlan,* 42 NY2d 896). Concur — Sandler, J.P., Sullivan, Ross, Lupiano and Silverman, JJ.