516 A.2d 976

**In re CRIMINAL INVESTIGATION NO. 1–162, In the Circuit Court for Anne Arundel County.**

**No. 27, Sept. Term, 1986.**

Court of Appeals of Maryland.

Nov. 10, 1986.

Dale P. Kelberman, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., and Deborah K. Chasanow, Asst. Atty. Gen., on the brief), Baltimore, for appellant.

John H. Morris, Jr. and David B. Irwin (Venable, Baetjer & Howard, William A. Swisher, Baltimore, Kenneth H. Masters, Catonsville, and John W. Moyer and Gerald W. Soukup, Towson, on the brief), for appellee.

Argued before MURPHY, C.J., ELDRIDGE, COLE, RODOWSKY, COUCH and McAULIFFE, JJ., and MARVIN H. SMITH, Associate Judge of the Court of Appeals of Maryland (retired), Specially Assigned.

MURPHY, Chief Judge.

Maryland Code (1957, 1982 Repl.Vol.), Article 27, § 262 confers immunity from prosecution upon witnesses compelled by the State to testify in the course of a gambling investigation. This case focuses upon the scope or extent of the immunity provided by § 262, which reads as follows:

"No person shall refuse to testify concerning any gaming or betting because his testimony would implicate himself and he shall be a competent witness and compellable to testify against any person or persons who may have committed any of the offenses set forth under this subtitle, provided that any person so compelled to testify

in behalf of the State in any such case shall be exempt from prosecution, trial and punishment for any and all such crimes and offenses of which such person so testifying may have been guilty or a participant and about which he was so compelled to testify."

## I.

On October 7, 1985, eleven persons appeared before the Anne Arundel County Grand Jury in response to summonses issued in the course of investigations into alleged gambling and related amusement tax and income tax violations. The witnesses, upon advice of counsel, gave only their names and addresses to the Grand Jury. Each witness then invoked the fifth amendment privilege against compelled self-incrimination in response to all other questions.

The prosecutor advised the witnesses that § 262 gave them immunity from prosecution, trial and punishment for any and all crimes about which they might be compelled to testify. The witnesses nevertheless declined to testify. Thereafter, the prosecutor filed motions to compel their testimony, pursuant to Maryland Rule 4-631.[1] In response to the motions, the witnesses claimed that the immunity conferred upon them by § 262 was not sufficient to protect them from prosecution for crimes other than gambling violations concerning which their testimony might relate; therefore, the witnesses contended that the § 262 immunity

---

**1.** The rule provides:
   "(a) Requested by State.—In any proceeding under this Title, before a grand jury, or pursuant to Code, Article 10 § 39A, if a witness lawfully refuses to answer or to provide other information on the basis of the privilege against self incrimination, the court, when authorized by law, shall compel the witness to answer or otherwise provide information if:
   (1) The State's Attorney requests in writing or on the record that the court order the witness to answer or otherwise provide information, notwithstanding the witness' claim of privilege; and
   (2) The court informs the witness of the scope of the immunity the witness will receive as provided by the appropriate statute.
   (b) Order of Court.—The court shall enter its order compelling testimony in writing or on the record."

did not displace their fifth amendment privilege. The circuit court (Williams, J.) denied the motions to compel. The State appealed to the Court of Special Appeals, which heard oral argument of the appeal on December 10, 1985. On February 6, 1986, the intermediate appellate court affirmed the judgment of the circuit court. *In Re Criminal Investigation No. 1-162*, 66 Md.App. 315, 503 A.2d 1363 (1986). It concluded that § 262 limited the immunity conferred only to gambling crimes and not, as the State contended, "to any and all questions put to the witnesses by the prosecution." It said that "prosecutors may not convert specific witness immunization statutes into fishing expeditions in matters extraneous to the express purpose of the particular statute." 66 Md.App. at 320, 503 A.2d 1363. We granted certiorari to consider the significant issue involved in the case.

## II.

### *Mootness*

■ The term of the Grand Jury before which the State sought to compel the witnesses to testify expired on March 1, 1986, and it was discharged. Earlier, in February, the State initiated prosecutions in the District Court of Maryland for the gambling and tax offenses that formed the basis of the Grand Jury investigation. After the opinion of the Court of Special Appeals was filed, the State petitioned for certiorari on February 21, 1986. We granted the petition on April 21, 1986. On June 10, 1986, during the pendency of the case before us, all but one of the targets of the Grand Jury investigation were found guilty of certain gambling offenses. Based on these facts, the witnesses argue that this case is moot and they urge dismissal of the appeal.

Although the Court has the constitutional authority to decide moot cases, we rarely exercise it. *Reyes v. Prince George's County*, 281 Md. 279, 297–99, 380 A.2d 12 (1977). Thus, we generally dismiss an appeal when a case becomes

moot. *E.g., Mercy Hosp. v. Jackson,* 306 Md. 556, 510 A.2d 562 (1986); *County Comm'rs v. Secretary of Health,* 302 Md. 566, 489 A.2d 1127 (1985); *Nat'l Collegiate Athletic Ass'n v. Tucker,* 300 Md. 156, 476 A.2d 1160 (1984). As we so recently noted in *Mercy Hosp., supra,* 306 Md. at 563, 510 A.2d 562, quoting from *Lloyd v. Supervisors of Elections,* 206 Md. 36, 43, 111 A.2d 379 (1954), we will depart from this general rule

> " 'if the public interest clearly will be hurt if the question is not immediately decided, if the matter involved is likely to recur frequently, and its recurrence will involve a relationship between government and its citizens, or a duty of government, and upon any recurrence, the same difficulty which prevented the appeal at hand from being heard in time is likely again to prevent a decision....' "

We think the present case meets these criteria. Clearly, the public has an interest in the effective investigation and prosecution of violations of this State's criminal laws. The General Assembly considered this interest sufficiently strong to enact immunity statutes to assist the State in certain instances. *See, e.g.,* Code (1957, 1982 Repl.Vol.) Art. 27, § 23 (bribery), § 262 (gaming), § 298(c) (narcotics), § 371 (lotteries), § 540 (sabotage). With the exception of § 540, these immunity provisions contain similar language.[2]

---

**2.** Section 23 provides in pertinent part:
"[A]ny person so compelled to testify in behalf of the State in any such case shall be exempt from prosecution, trial and punishment for *any such* crime of which such person so testifying may have been guilty or a participant therein, and about which he was so compelled to testify." (Emphasis added.)
Section 298(c) provides in pertinent part:
"[A]ny person so compelled to testify on behalf of the State in any such case shall be exempt from prosecution, trial and punishment for *any and all such* crimes and offenses about which such person was so compelled to testify." (Emphasis added.)
Section 371 provides in pertinent part:
"[A]ny person so compelled to testify in behalf of the State in any such case shall be exempt from prosecution, trial and punishment for *any and all such* crimes and offenses of which such person so testifying may have been guilty of [as] a participant therein and about which he was so compelled to testify." (Emphasis added.)

Thus, the same issue regarding the scope of immunity is likely to recur with frequency.

Similarly, the parties would be likely to have the same difficulties in obtaining prompt appellate review. As in this case, many of the offenses covered by the immunity statutes must be prosecuted within one year of their occurrence. *E.g.*, Code (1957, 1982 Repl.Vol.), Art. 27, §§ 287, 287A(c), 287A(d), 358, 360–364. The one-year statute of limitations, combined with the limited term of a Grand Jury, severely compresses the time that we have to render a decision. Although we can expedite briefing, argument, and decision, that procedure does not allow us the unhurried contemplation helpful for resolution of important issues. *See Mercy Hosp., supra,* 306 Md. at 567, 510 A.2d 562 (McAuliffe, J., dissenting).

Furthermore, the issue presented does not depend on the precise facts of this case; rather, its resolution is solely a matter of law. *Compare Nat'l Un. of Hosp. v. Johns Hopkins,* 293 Md. 343, 350 n. 2, 444 A.2d 448 (1982) (Court determined Anti-Injunction Act's applicability to labor disputes at nonprofit hospitals despite mootness) *with Mercy Hosp., supra,* 306 Md. at 563, 510 A.2d 562 (Court declined to address right of Jehovah's Witness to refuse blood transfusion because, *inter alia,* the case was too fact-dependent). *See also News American v. State,* 294 Md. 30, 39, 447 A.2d 1264 (1982) (Court distinguished between fact-dependent issue of gag order and purely legal issue of proper way for press to raise first amendment issues in criminal cases). In addition, the Court of Special Appeals' decision limiting the scope of immunity granted by § 262, if

---

On the other hand, § 540 defines the immunity from prosecution as follows:

"[N]o person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he may so testify or produce evidence, documentary or otherwise, and no testimony so given or produced shall be received against him, upon any criminal investigation, proceeding or trial, except upon a prosecution for perjury or contempt of court based upon the giving or producing of such testimony."

correct, would severely hamper the State's ability to prosecute violations of the bribery, gaming, lotteries, and narcotics laws. *See News American, supra,* 294 Md. at 39, 447 A.2d 1264 (Court's disagreement with Court of Special Appeals' opinion one factor in its decision to discuss moot case).

### III.

■■■ The fifth amendment to the United States Constitution grants witnesses a privilege against compelled self-incrimination.[3] A witness may assert the privilege in any proceeding in order to prevent disclosures that the witness reasonably believes could be used in a criminal prosecution or as a lead to uncover other evidence for a criminal prosecution. *Hoffman v. United States,* 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951).

■■■ Despite this privilege, the government can compel a witness to testify if the witness obtains immunity coextensive with the privilege. *Kastigar v. United States,* 406 U.S. 441, 449, 92 S.Ct. 1653, 1658, 32 L.Ed.2d 212 (1972); *Murphy v. Waterfront Commission,* 378 U.S. 52, 54, 84 S.Ct. 1594, 1596, 12 L.Ed.2d 678 (1964); *Counselman v. Hitchcock,* 142 U.S. 547, 585, 12 S.Ct. 195, 206, 35 L.Ed. 1110 (1892). The immunity must be granted by statute; a court has no inherent power to compel testimony in the face of a witness' claim of the fifth amendment privilege. *In re Special Investigation No. 231,* 295 Md. 366, 371, 455 A.2d 442 (1983) (quoting *Bowie v. State,* 14 Md.App. 567, 575, 287 A.2d 782 (1972)). To be valid, the statutory immunity must

---

3. In *Malloy v. Hogan,* 378 U.S. 1, 3, 84 S.Ct. 1489, 1490, 12 L.Ed.2d 653 (1964), the Supreme Court held that the fifth amendment privilege applied to the states through the due process clause of the fourteenth amendment.

Article 22 of the Maryland Declaration of Rights grants the same privilege against compulsory self-incrimination. We have consistently construed Article 22 to be *in pari materia* with the fifth amendment. *Richardson v. State,* 285 Md. 261, 265, 401 A.2d 1021 (1979). Thus, Article 22 provides protection identical to that provided by the fifth amendment privilege.

leave the government in substantially the same position with regard to prosecution of the witness as it would have been if the witness had asserted the privilege against self-incrimination. *Murphy, supra,* 378 U.S. at 79, 84 S.Ct. at 1609.

Three types of immunity are possible. Use immunity protects against the future use of the witness' compelled testimony in a criminal prosecution of the witness; use and derivative use immunity prohibit the use of the witness' testimony to uncover other evidence for use against the witness; and transactional immunity bars any future prosecution of the witness for offenses based on the compelled testimony. *See Kastigar, supra,* 406 U.S. at 453, 92 S.Ct. at 1661; *Butler v. State,* 55 Md.App. 409, 462 A.2d 1230 (1983). Use immunity alone is not broad enough to defeat the privilege as the danger remains that the compelled testimony might be used indirectly or derivatively to place the witness in a more incriminated posture than before such testimony. *Counselman v. Hitchcock, supra.* To withstand a constitutional challenge, an immunity statute must provide either use and derivative use or transactional immunity.[4] *Kastigar, supra,* 406 U.S. at 453, 92 S.Ct. at 1661.

For reasons which follow, we think the General Assembly, in enacting § 262, intended to provide witnesses with transactional immunity, the broadest of the three forms of

---

**4.** In any subsequent prosecution of the witness, the government has the burden of demonstrating that its evidence is derived from a source wholly independent of the compelled testimony. *Kastigar, supra,* 406 U.S. at 460, 92 S.Ct. at 1664; *Murphy, supra,* 378 U.S. at 79 n. 18, 84 S.Ct. at 1609 n. 18.

If the witness has been granted transactional immunity and is then indicted, the defendant must demonstrate a substantial connection between the immunized testimony and subsequent prosecution, either as a defense to the charge or in a motion to dismiss the indictment. *See Edwards v. United States,* 312 U.S. 473, 479–80, 61 S.Ct. 669, 673–74, 85 L.Ed. 957 (1941); *Hale v. Henkel,* 201 U.S. 43, 68, 26 S.Ct. 370, 376, 50 L.Ed. 652 (1906); *State v. Comes,* 237 Md. 271, 281, 206 A.2d 124 (1965).

immunity.[5] Although § 262 clearly applies only to witnesses in a gaming or betting investigation, the scope of the immunity granted by the phrase "exempt from prosecution, trial and punishment for any and all such crimes and offenses" necessarily governs our determination. If the immunity applies only to prosecution for gaming and betting offenses, as the witnesses contend, the statute does not provide sufficient protection to overcome the fifth amendment privilege. If, however, the scope of the statutory immunity is broader than its application, as the State contends, the statute meets constitutional requirements.

In construing a statute, a court must ascertain and carry out the real legislative intent. *Police Comm'r v. Dowling*, 281 Md. 412, 418, 379 A.2d 1007 (1977). The court looks first to the language of the statute, assuming that it is to be afforded its ordinary and generally understood meaning. *Mauzy v. Hornbeck*, 285 Md. 84, 92–93, 400 A.2d 1091 (1979). If the statutory language contains no ambiguity or obscurity, the court generally looks no further. *State v. Fabritz*, 276 Md. 416, 421, 348 A.2d 275 (1975), *cert. denied*, 425 U.S. 942, 96 S.Ct. 1680, 48 L.Ed.2d 185 (1976).

When a statute can be fairly read to have more than one meaning, however, the court will examine the statute's subject matter, purpose, and object and consider the consequences flowing from different constructions. *State v. Berry*, 287 Md. 491, 496, 413 A.2d 557 (1980). If one of the proposed interpretations would render the statute valid while another would render it invalid or ineffective, the court will construe the statute to be valid whenever feasible. *Pickett v. Prince George's County*, 291 Md. 648, 661, 436 A.2d 449 (1981).

---

**5.** As earlier noted, the General Assembly has enacted immunity statutes applicable in the investigation and prosecution of specific crimes. The legislature has refused at least four times to enact a general immunity statute providing use and derivative use immunity; the bills either died in committee or received an unfavorable report. *See* S.B. 1285 (1978); H.B. 981 (1979); H.B. 197 (1980); H.B. 519 (1981); S.B. 482 (1981).

With the above principles in mind, we now turn to § 262. The final phrase of that statute provides that any person compelled to testify "shall be exempt from prosecution, trial and punishment for any and all such crimes and offenses of which such person so testifying may have been guilty or a participant and about which he was so compelled to testify." The State argues that the witnesses and the lower courts confuse the application of § 262 with the scope of immunity granted by this phrase. Thus, according to the State, as long as a gaming or betting investigation is being conducted, a witness compelled to testify in that investigation receives transactional immunity for any offense revealed by that witness' responsive answers. The State also contends that this interpretation of § 262 follows plainly from the statutory language.

The witnesses maintain, as the Court of Special Appeals held, that the statute plainly confers immunity only for gaming offenses revealed by the compelled testimony. They argue that the word "such" in the phrase "any and all such crimes and offenses" refers to the phrase, "offenses under this subtitle," used to define the witnesses to whom the immunity statute applies.

The language of § 262 supports both constructions. Therefore, we must look beyond the words themselves and examine the purpose of the statute and the consequences of different constructions. *Berry, supra,* 287 Md. at 496, 413 A.2d 557. As the Supreme Court explained in *Kastigar, supra,* 406 U.S. at 446, 92 S.Ct. at 1656, immunity statutes "seek a rational accommodation between the imperatives of the privilege and the legitimate demands of government to compel citizens to testify." Furthermore, such statutes reflect the fact that some offenses are difficult to investigate or prosecute without the testimony of persons involved in the crime. *Id.*

If we accept the witnesses' construction of § 262, the statute will have little, if any, utility. Persons compelled to testify would receive transactional immunity only for gam-

ing or betting offenses. This immunity would not be coextensive with the witness' fifth amendment privilege if the witness reasonably believed that responsive answers to any of the questions would reveal the witness' involvement in other crimes. It is reasonable to assume that testimony about gaming or betting violations could also be used in prosecutions for other offenses, such as tax evasion. Indeed, the State in this case was investigating both offenses. Thus, construction of § 262 proposed by the witnesses would significantly hamper the State's ability to pursue gaming investigations.

The State's proposed construction, on the other hand, would make the statute considerably more useful. It could use § 262 to facilitate gaming investigations and prosecutions, as the legislature intended, and the witness would not lose the protection of the fifth amendment privilege against compelled self-incrimination.

Many courts have distinguished in this manner between the application of an immunity statute and the scope of immunity granted. *Brown v. United States,* 359 U.S. 41, 47, 79 S.Ct. 539, 544, 3 L.Ed.2d 609 (1959); *In re Vericker,* 446 F.2d 244, 247 (2d Cir.1971); *In re Grand Jury Investigation of Giancana,* 352 F.2d 921, 923 (7th Cir.), *cert. denied,* 382 U.S. 959, 86 S.Ct. 437, 15 L.Ed.2d 362 (1965); *State v. Kelly,* 71 So.2d 887, 894 (Fla.1954); *Gold v. Menna,* 25 N.Y.2d 475, 255 N.E.2d 235, 237–38, 307 N.Y.S.2d 33, 35–38 (1969). The statutes involved in these cases do use language different from § 262 to define the scope of the immunity.[6] But the cases correctly explain that the analysis of an offense-specific immunity statute, such as § 262, requires two steps: First, is the State investigating an offense that triggers the applicability of the immunity grant? If so, are the questions substantially related to the

---

**6.** The statutes involved in these cases all limited the witnesses to whom immunity could be granted, as § 262 does. They described the immunity, however, as transactional immunity "for or on account of any transaction, matter, or thing," as Maryland's sabotage immunity statute does.

offense making the statute applicable? *In re Vericker, supra,* 446 F.2d at 247; *Kelly, supra,* 71 So.2d at 894. *See also Heike v. United States,* 227 U.S. 131, 144, 33 S.Ct. 226, 228, 57 L.Ed. 450 (1913) (to support claim of immunity, compelled testimony must be substantially related to particular charge).

Such an analysis avoids the myopic result posited by the witnesses. Of course, the State cannot transform a specific immunity statute into a general one. A bona fide gaming investigation must be involved before the State can utilize § 262 to compel testimony. And only responsive answers to questions related to the gaming investigation would be covered by the grant of immunity. Thus, the State could not compel answers to questions totally unrelated to the gaming investigation, and the witness could not obtain immunity for crimes not related to the compelled testimony.[7]

The witnesses urge, however, that such an attempt to construe § 262 to render it valid contravenes the legislative intent as demonstrated by the history of § 262. They point out that the precursor of § 262 was enacted by ch. 195 of the Acts of 1856. Codified as § 258 of the 1924 Code, it provided:

"No person shall refuse to testify concerning any gaming or betting because his testimony would implicate himself; but when any such person is required to testify in behalf of the State, he shall not be prosecuted for any offense to which his testimony relates."

Section 262 was enacted by ch. 438 of the Acts of 1937; it amended former § 258 by changing the last phrase of that statute from "he shall not be prosecuted for any offense to which his testimony relates" to "any person so compelled to testify ... shall be exempt from prosecution ... for any

---

7. This construction thus bars the "fishing expeditions" feared by the Court of Special Appeals. 66 Md.App. at 320, 503 A.2d 1363. Without a bona fide gaming investigation, the State would have no basis for compelling testimony over a witness' claim of privilege.

and all such crimes and offenses of which such person so testifying may have been guilty or a participant and about which he was compelled to testify." According to the witnesses, this change demonstrates that the legislature intended to limit the scope of the immunity granted.

Generally, a substantive amendment to an existing statute indicates an intent to change the meaning of that statute. 1A *Sutherland Statutory Construction* § 22.30 (1985); *see also United States v. Canadian Vinyl Industries,* 555 F.2d 806, 810 (C.C.P.A.1977); *Stiftel v. Malarkey,* 384 A.2d 9, 13 (Del.1977). The legislature is presumed to know of and disagree with prior construction of the statute. *See In re Special Investigation No. 236,* 295 Md. 573, 576, 458 A.2d 75 (1983); *cf. Nutwell v. Sup. of Elections,* 205 Md. 338, 343, 108 A.2d 149 (1954) (Court presumed legislature agreed with 1911 interpretation of election laws because it had failed to change them). The circumstances surrounding the amendment must be considered, however, in order to determine the legislature's intent. *United States v. Montgomery County,* 761 F.2d 998, 1003 (4th Cir.1985); *West Winds, Inc. v. M.V. Resolute,* 720 F.2d 1097, 1100 (9th Cir.1983); *O'Connor v. A & P Enterprises,* 81 Ill.2d 260, 41 Ill.Dec. 782, 787, 408 N.E.2d 204, 209 (1980). For example, the presumption of changed meaning is weakened if the particular change at issue was not an isolated or singular amendment, but part of a comprehensive statutory revision. *Recht-Goldin-Siegal C., Inc. v. Wisconsin Dept. of Rev.,* 64 Wis.2d 303, 219 N.W.2d 379, 382 (1974); *see also In re Kossow,* 393 A.2d 97 (D.C.1978) (court examined entire statutory revision and legislative history to determine congressional intent in deleting particular provision).

The circumstances surrounding the 1937 amendment to what is now § 262 indicate that we should not rely solely on that amendment in interpreting the scope of the immunity grant. First, the legislature apparently did not amend the statute in response to a judicial construction with which it disagreed; we can find no reported cases construing the

earlier version of what is now § 262. Second, the General Assembly not only amended the final phrase of the statute, but also substantially rewrote the entire provision. Finally, the General Assembly also amended the bribery immunity statute and enacted the lottery immunity statute on the same day that it amended the predecessor to § 262. All three statutes defined the scope of immunity in similar language.[8]

▮▮▮ Legislative enactments treating the same subject matter should generally be construed harmoniously, especially if enacted at the same time. *State v. Loscomb*, 291 Md. 424, 432, 435 A.2d 764 (1981); *State v. Barnes*, 273 Md. 195, 207, 328 A.3d 737 (1974). In *Brown v. State*, 233 Md. 288, 196 A.2d 614 (1964), we rejected a constitutional challenge to the bribery immunity statute, which contains language similar to § 262, and we think that case controls here.

In *Brown*, we characterized the immunity granted by § 23 as broad. 233 Md. at 297, 196 A.2d 614. Although § 23 referred only to bribery, we determined that the statute also conferred transactional immunity for attempted bribery and conspiracy to bribe.[9] *Id.* at 297–98, 196 A.2d 614. We found no merit in Brown's contention that his testimony would expose him to prosecution for "unrelated crimes." He did not specify what other offenses his testimony might reveal, and we thought the danger of prosecution for other crimes too remote to require constitutional protection. *Id.* at 299–300, 196 A.2d 614.

▮▮▮ In this case, the witnesses reasonably feared prosecution for crimes related to gaming offenses that would

---

8. The lottery immunity statute has language identical to § 262. The bribery immunity statute uses the phrase "any such crime" rather than "any and all such crimes and offenses."

9. The Court construed § 23 to provide immunity from conspiracy to bribe, but noted that a separate statute, Article 27, § 39, also provided such protection for conspiracy.

have been revealed by their compelled testimony. The danger of prosecution for these related offenses was not remote; in fact, the State initiated both gaming and tax evasion prosecutions based on its investigations. Thus, the witnesses in this case, unlike Brown, deserve constitutional protection from the danger of prosecution, and § 262 provides it by granting them transactional immunity.

The witnesses contend that we read § 23 narrowly in *Brown* and thus must construe § 262 narrowly as well. We disagree. In *Brown,* we considered the offenses that might be revealed by Brown's compelled testimony and determined that § 23 conferred transactional immunity for those offenses. Because we considered remote the possibility that Brown would be subject to prosecution for "unrelated crimes," we rejected his constitutional challenge to § 23. We do the same in this case. Manifestly, the compelled testimony of the witnesses could reveal their involvement in tax as well as gaming offenses. Because the State sought to compel this testimony in a gaming investigation, however, § 262 applies and grants transactional immunity to the witnesses. Thus, in the circumstances, it was error not to compel the witnesses' testimony before the Grand Jury.

JUDGMENT OF THE COURT OF SPECIAL APPEALS VACATED; CASE REMANDED TO THAT COURT WITH DIRECTIONS TO DISMISS THE APPEAL AS MOOT; EACH PARTY TO PAY ITS OWN COSTS.