692 A.2d 949

**Eric Lewis CLARK**

**v.**

**STATE of Maryland.**

**No. 747 Sept. Term 1996.**

Court of Special Appeals of Maryland.

April 21, 1997.

Eric Lewis Clark, Westover, for Appellant.

Gwynn X. Kinsey, Jr., Assistant Attorney General and David J. Taube, Staff Attorney (J. Joseph Curran, Jr., Attorney General, on the brief), Baltimore, for Appellee.

Submitted before MOYLAN and HARRELL, JJ., and PAUL E. ALPERT, J. (Retired Specially Assigned).

HARRELL, Judge.

Appellant, Eric Lewis Clark, pled guilty in the Circuit Court for Queen Anne's County (Sause, Jr., J.) to possession of cocaine with the intent to distribute and wearing, carrying, or transporting a handgun. On 13 April 1994, the court sentenced appellant to a total of seventeen years of imprisonment.

On 21 March 1996, appellant, while incarcerated and serving his above sentences, filed a motion with the circuit court requesting permission to participate in a drug treatment program pursuant to Section 8–507(a), Md.Code, Health–General Article (H.G.) (1994 Repl.Vol., 1996 Supp.). The circuit court characterized appellant's motion as a request to modify his sentence. Because the modification request was filed after the 90 day time limit set forth in Maryland Rule 4–345, the circuit court dismissed the motion on 29 March 1996 for lack of jurisdiction.

Appellant appeals the circuit court's dismissal of his motion arguing that the circuit court erred when it refused to exercise its discretion and review his motion. We find no reversible error by the circuit court.[1]

Maryland Rule 4–345 governs modification of a sentence and provides in pertinent part:

**(b) Modification or Reduction—Time for.**—The court has revisory power and control over a sentence upon a motion

---

1. We note that the State initially argues in its brief that this case should be dismissed under *Valentine v. State,* 305 Md. 108, 501 A.2d 847 (1985). If appellant had argued that his sentence was illegal, we would agree with the State. Appellant, however, contends that his sentence was legal, but desires permission to enter a drug treatment program. Accordingly, we shall address appellant's complaint.

filed within 90 days after its imposition ... Thereafter, the court has revisory power and control over the sentences in case of fraud, mistake, or irregularity, or as provided in section (d) of this Rule [relating to non-support cases]. The court may not increase a sentence after the sentence has been imposed, except that it may correct an evident mistake in the announcement of a sentence if the correction is made on the record before the defendant leaves the courtroom following the sentencing proceeding.

Section 8–507 governs commitment for drug treatment and provides in pertinent part:

(a) *In general.*—If a court finds in a criminal case that a defendant has an alcohol or drug dependency the court may commit the defendant as a condition of release, after conviction, *or at any other time the defendant voluntarily agrees to treatment* to the Department [of Health and Mental Hygiene] for inpatient, residential, or outpatient treatment. (Emphasis added).

Appellant argues that the emphasized language in Section 8–507 means that *any* time an inmate voluntarily agrees to treatment, a court may modify an inmate's sentence and commit him to a drug treatment program. Accordingly, appellant argues that the time limit set forth in Maryland Rule 4–345(b) governing modification of sentences does not apply to a request for commitment to a drug treatment program under H.G. § 8–507. We disagree. In addressing appellant's argument, we must review the history of Maryland's drug, and to a lesser extent Maryland's alcohol, treatment laws.

 The object of statutory construction is to discern and effectuate the intention of the Legislature when it drafted and enacted the statute. *Baltimore v. Cassidy,* 338 Md. 88, 93, 656 A.2d 757 (1995). Giving the words their ordinary and common meaning in light of the full context in which they appear, and "in light of external manifestations of intent or general purpose available through other evidence, normally will result in the discovery of the Legislature's intent." *Harris v. State,* 331 Md. 137, 146, 626 A.2d 946 (1993) (some

internal quotations and citations omitted). A bill's title, amendments that occur as it passed through the Legislature, and its relationship to earlier and subsequent legislation, may also shed light on the legislative purpose or goal. *Harris,* 331 Md. at 146, 626 A.2d 946. With these guiding principles in mind, we now turn to the process of statutory construction.

In 1966, the Maryland General Assembly enacted the State's first drug treatment statute. Codified in Maryland Code (1957, 1967 Repl.Vol.), Art. 27, Section 306B, it provided:

> Notwithstanding the provision of this subheading, a court after conviction may suspend the sentencing of any narcotic addict found guilty of violating the provisions of this subheading and commit to any appropriate institution, hospital or any other facility in the State for the treatment of narcotic addicts. The addict shall remain in the institution or hospital until the director of the facility determines that he is medically eligible to be released in the community to an authorized aftercare program. If the released addict reverts to the use of narcotic drugs, this shall constitute a violation of his terms of release, and he shall be returned to the facility, where he was originally admitted or shall serve the remainder of his term in the appropriate penal or correctional institution, at the court's discretion.

The Legislature substantially revised this law in 1969. The new statute created Article 43B, titled "Comprehensive Drug Abuse Control and Rehabilitation Act." The statute expressly applied to addicts who are not accused of crimes, as well as addicts convicted of crimes. Article 43B, Section 1(c)(1970 Cum.Supp.). To that end, the statute divided those seeking commitment into: "Commitment of persons not charged with or convicted of crime" (Section 9), "Commitment of persons upon conviction of crime" (Section 12) and "Commitment of inmates of penal or correctional institutions" (Section 13). Article 43B, Sections 9, 12, and 13 (1970 Cum.Supp.).

In 1982, the Legislature revised the Maryland Code and created the Health–General Article. Article 43B was repealed and transferred to Title 9 of the new Health–General Article.

Title 9 was titled "Misuse of Drugs" and one of its stated purposes was "[t]o help each drug abuser, whether or not the drug abuser is accused or convicted of a crime." H.G. § 9–102(b)(2)(i) (1982 Repl.Vol.). Title 9 retained the earlier distinction between commitment of those persons not charged with or convicted of a crime (Sections 9–611 through 9–618), commitment of those persons convicted of a crime (Sections 9–629 through 9–636), and commitment of those persons in correctional institutions (Sections 9–637 through 9–645).

That same year, the Legislature enacted Title 8 to the Health-General Article. Title 8 was titled "Misuse of Alcohol." H.G. § 8–507, titled "Inpatient facilities," governed admission to an alcohol treatment facility.[2] H.G. § 8–510 titled "Commitment of individual charged with crime" provided, in pertinent part:

> (a) *In general.*—(1) If a district court or circuit court judge is satisfied that a defendant in a criminal case is a

---

2. Section 8–507 provided in pertinent part:

> (a) *Admission request.*—An individual may ask voluntarily for admission to an inpatient facility, whether or not the individual has been admitted to the facility before.
>
> (b) *Determinations on admission.*—After an individual asks for admission to an inpatient facility, the medical officer then in charge of the facility may determine whether the individual is to be admitted. However, the medical officer may not deny readmission of an individual solely because the individual previously left the facility against medical advice.
>
> (c) *Patient history.*—After an individual is admitted to an inpatient facility, the facility shall obtain, for diagnosis and classification, the complete medical, social, occupational, and family history of the individual, including a copy of pertinent records that can be obtained from other agencies or medical facilities.
>
> (d) *Treatment.*—(1) If a chronic alcoholic consents to inpatient treatment, the inpatient facility:
>
> > (i) Immediately shall begin intensive treatment; and
> >
> > (ii) Shall prepare a comprehensive plan for outpatient treatment of the individual.
> >
> > (2) The treatment plan shall be in writing and available to the individual.
>
> (e) *Departures.*—An individual who is admitted voluntarily to an inpatient facility may not be detained involuntarily. However, reasonable rules and regulations for leaving the facility and for providing transportation for that purpose may be adopted.

chronic alcoholic, the judge may commit the defendant to the Department for evaluation and treatment, under the conditions that the judge sets forth.

Interestingly, Title 8 contained no provision for the commitment of inmates at that time.

In 1986, the Legislature repealed H.G. §§ 9–637 through 9–645 concerning inmate commitment for drug treatment. The Legislature did not reenact a corresponding section. In 1988, H.G. §§ 9–629 through 9–636, concerning drug treatment for those convicted of a crime, were transferred to H.G. §§ 8–629 through 8–636 with little change. In 1989, the Legislature repealed H.G. §§ 8–629 through 8–636. In that same year H.G. § 8–507 was enacted in its present form and provided for both drug and alcohol treatment for "defendants." *See* H.G. § 8–507(a) (applies to "a defendant [who] has an alcohol or drug dependency"). H.G. § 8–507 has remained much the same up to the present.

Thus, upon reviewing the history and language of the drug and alcohol treatment statutes in Maryland extant as of the circuit court's ruling in the instant case, we discern that the Legislature's actions may be argued to support a conclusion that it did not intend to provide inmates with a vehicle to obtain court-ordered commitment to a drug or alcohol treatment program after 1986. Between 1969 and 1986, the Legislature specifically provided inmates with a drug treatment plan to which they could be committed by a court. Then, in 1986, the Legislature repealed the provision. It had not seen fit to re-instate it prior to 29 March 1996, when the circuit court ruled in the instant case. The Legislature's failure to re-instate a drug treatment program for inmates at that point, in addition to withdrawing the courts' ability to act on inmate requests, strongly suggests that the Legislature did not intend that inmates be provided a drug treatment program at all, whether for budgetary or other reasons.

■ Appellant attempts to maneuver around this problem by asserting that when the Legislature enacted H.G. § 8–507(a) in its present form, the Legislature intended to cover

persons who are being sentenced and inmates who are already sentenced. This assertion strikes us as untenable for two reasons. First, H.G. § 8–507 uses the term "defendant." The common meaning of the word "defendant" refers to a party in a criminal proceeding, not a person who has been convicted of a crime and is currently serving a prison sentence. *Compare* Black's Law Dictionary 218 and 403 (5th ed. 1983) (where the word "defendant" is defined as "the accused in a criminal case" and the word "inmate" is defined as "a person confined to a prison, penitentiary, or the like."). Moreover, when the Legislature desired to provide treatment to a person convicted and serving a prison sentence, it had used the word "inmate." *See* H.G. § 9–638 (1982). Accordingly, we believe that the Legislature's use of the word "defendant" in H.G. § 8–507 indicates that it intended that section to apply to defendants, not inmates.

There is yet a second reason why we believe that the drug treatment scheme contemplated by H.G. § 8–507 applies only to defendants and not to inmates. Between 1966 and 1986 when inmates were afforded a court-orderable drug treatment opportunity, the law provided that inmates who wanted to avail themselves of the program had to initiate their request by petition. *See* H.G. §§ 9–638(a) (1982) ("If an inmate in a correctional institution in this State believes that the inmate is a drug addict, then with the approval of the Maryland Parole Commission, *the inmate may file a petition to be committed)* (emphasis added). More important, the Legislature provided a means for an inmate to effectuate his request. *See* H.G. § 9–642(1982) (providing for a trial where the inmate may offer evidence on the commitment petition and cross-examine adverse witnesses). The drug treatment law, as it now exists in H.G. § 8–507, does not contain any provision acknowledging a similar inmate petition process.

Obviously realizing that it had left the legislative field devoid of any expression that inmates were to be provided with any drug or alcohol treatment programs to combat the

20th Century plague of drug abuse,[3] the General Assembly in 1996[4] approved Subtitle 6A, § 8–6A–01 to be added to the Health–General Article (Chps. 670 and 671, Laws 1996).[5] The new section provides:

> *Subtitle 6A. Alcohol Abuse and Drug Abuse Treatment for Inmates.*
>
> *§ 8–6A–01. Alcohol abuse and drug abuse treatment programs [Sub-title subject to abrogation].*[6]
>
> *(a) Definitions—(1) In this subtitle the following words have the meaning indicated.*
>
> *(2) "Alcohol abuse and drug abuse treatment program" has the meaning stated in § 8–403(a) of this title.*
>
> *(3) "Inmate" means:*
>
> *(i) A person detained in a State correctional facility; or*
>
> *(ii) A child committed to custody or guardianship under § 3–820(c) of the Courts Article for a period of more than 90 days.*
>
> *(b) Placement in appropriate program.—Except as otherwise provided in subsection (c) of this section, an inmate who is determined by a physician licensed under § 14–301 of the Health Occupations Article or a mental health profes-*

---

**3.** We do not intimate whether drug treatment programs were otherwise available to inmates of the Maryland penal system since 1986. We cannot imagine they were not. Our focus in this opinion is only on whether the Legislature expressly provided for such via a court-ordered commitment process.

**4.** Chps. 670 and 671 were approved by the General Assembly on 23 May 1996, almost two months following the trial court's ruling in the instant case. The qualified effective date of the legislation was 1 July 1996.

**5.** Neither appellant, acting *pro se,* or the State referred to this statutory provision in their briefs filed after 1 July 1996.

**6.** Chps. 670 and 671 contained sunset provisions that provided that, absent further action by the Legislature, they would be of no further force and effect after 30 June 2001. Moreover, other limitations were provided on the treatment programs, such as "caps" on the number of inmates who could be admitted to the programs in each contemplated fiscal year.

*sional who has a master's degree in a mental health field and has expertise in the treatment of substance abuse to have an alcohol or drug dependence shall be placed in an appropriate alcohol abuse and drug abuse treatment program under the supervision of the physician or the mental health professional.*

*(c) Written consent.—Any treatment prescribed for alcohol or drug dependence may not commence until the inmate to be treated has consented in writing to the treatment.*

*(d) Procedures and standards subject to regulations.—All procedures and standards relating to the determination of an alcohol or drug dependence and the treatment of an inmate who has an alcohol or drug dependence and the treatment of an inmate who has an alcohol or drug dependence shall be subject to the regulations adopted by the Administration.*

*(e) Regulations.—The Administration shall adopt regulations to implement the provisions of this section.*

*(f) Funding.—The Governor shall provide funding in the annual budget for alcohol abuse and drug abuse treatment programs under this section.*

For purposes of the instant appeal, however, H.G. § 8–6A–01 is unavailing. First, it was not law when the circuit court ruled on appellant's Rule 4–345(b) motion. Second, its unambiguous provisions do not contemplate a role for the courts in the screening and placement process of inmates. For apparent management and budgetary reasons, the State Alcohol and Drug Abuse Administration of the Department of Health & Mental Hygiene was delegated the sole regulatory and operative authority, with supportive roles assigned to the Departments of Public Safety and Correctional Services and Juvenile Justice. In short, it does not serve as a predicate for a circuit court to order the relief appellant seeks based on an out-of-time Rule 4–345(b) motion.

In summary, we hold that, in light of the legislative history and language of the Maryland drug and alcohol statutes, H.G. § 8–507 cannot serve presently as an independent

basis for court-ordered drug treatment for inmates. Moreover, the time limit set forth in Maryland Rule 4–345(b) governs when a defendant can be committed to a drug treatment facility as part of his or her sentence. A court may commit the defendant to a drug treatment facility upon conviction. H.G. § 8–507(a). If the court does not commit the defendant to a drug treatment facility at that time, a court can still modify its sentence and commit a defendant to a drug treatment program, if a timely motion is filed within ninety days after conviction. Maryland Rule 4–345(b). It does not matter when the court acts on such a timely filed motion, only that it be filed timely. After the 90 day period expires without a motion being filed, the court has no authority to amend a sentence, unless the sentence involved "fraud, mistake, or irregularity." Maryland Rule 4–345(b). Because none of these circumstances was alleged in appellant's motion, the circuit court correctly dismissed appellant's motion for lack of jurisdiction.[7]

Appellant can pursue the new avenue of relief ostensibly made available by the Legislature under H.G. § 8–6A–01 by application to the State Alcohol and Drug Abuse Administration.

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**

PAUL E. ALPERT, Judge, Retired Specially Assigned, dissenting.

Because I am convinced that the majority has erred in their interpretation of Health–General Article § 8–507, I dissent.

---

7. Although we are not presented here with the situation of a person appearing before a circuit court in the context of determining whether a violation of probation (VOP) had occurred, we surmise that such a person could be a "defendant" for purposes of H.G. § 8–507(a) as he or she would have completed the predicate period of incarceration imposed by that sentencing judge before commencement of the probationary period and, thus, would not be back before the court in the VOP scenario as an "inmate". This would be true even if the petitioner were imprisoned at the time of the VOP proceeding due to another crime that serves also as the predicate for the VOP proceeding.

According to the World Book Encyclopedia, in the 1300s a form of the bubonic plague called the "Black Death" destroyed one-fourth of the population of Europe. The great plague of the 20th Century, as we are about to enter the 21st Century, is the plague of drug abuse. Although I do not have appropriate statistics, I would guess that, in one form or another, more than one-fourth of our population is affected. There are few precious tools that enable our society to combat this modern day pestilence. One of those tools is in the form of Health–General Article § 8–507. Having partially repealed that section, the majority, inadvertently I am sure, has eliminated one of those few tools.

### Legislative Intent—Legislature Knows How to Exclude

I reject the majority's legislative analysis of the Maryland drug and alcohol statutes and interpretation of the Md.Code Health–General Article § 8–507(a) which is the basis of their conclusion that § 8–507(a) does not serve as an independent basis for court-ordered drug treatment for inmates. Their conclusion is unsound given the plain reading of the statute and the legislative intent in enacting the statute.

Statutory construction begins with the literal language of a statute. *United States v. Turkette*, 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981). The statute must be read in light of "its ordinary and generally understood meaning." *In re Criminal Investigation No. 1–162*, 307 Md. 674, 685, 516 A.2d 976 (1986). When the words of the statute are clear and unambiguous, we need go no further, *G. Heileman Brewing Co. v. Stroh Brewery Co.*, 308 Md. 746, 755, 521 A.2d 1225 (1987), and the language will ordinarily be regarded as conclusive. *Turkette*, 452 U.S. at 580, 101 S.Ct. at 2527 (1981).

The majority holds that § 8–507 permits a defendant to be committed for alcohol or drug abuse treatment as a condition of release, after conviction or upon the granting of a request for modification of sentence pursuant to Maryland Rule 4–345(b) if the request was made within the 90–day time limit set forth in that rule. A proper interpretation of § 8–507,

however, inexorably leads to a different conclusion. Section 8–507 provides in pertinent part:

(a) *In general.*—If a court finds in a criminal case that a defendant has an alcohol or drug dependency, the court may commit the defendant as a condition of release, after conviction, or at any other time the defendant voluntarily agrees to treatment to the Department for inpatient, residential, or outpatient treatment.

If the legislature has chosen not to define a term, that word should be given its ordinary and commonly understood meaning. *See Criminal Investigation,* 307 Md. at 685, 516 A.2d 976. The statute allows the court to commit a defendant as a condition of release, after conviction, or *"any other time."* The ordinary and commonly understood meaning of "any other" means that there are no limitations. These words are clear and unambiguous, and therefore should be regarded as conclusive. To hold that the terms of the statute dictate that there is a time restriction on when a defendant can be committed to treatment, which in effect divests an inmate's eligibility under this statute, is not only contrary to the plain meaning of the words in the statute but also leads to an illogical conclusion. Had the legislature intended to place a time restriction on when a defendant can be placed in a drug treatment program under this statute, then they would have placed a limiting provision after the unlimiting phrase "any other time." Each statute must be given a reasonable interpretation, not one that is illogical or incompatible with common sense. *D & Y, Inc. v. Winston,* 320 Md. 534, 538, 578 A.2d 1177 (1990); *Blandon v. State,* 304 Md. 316, 319, 498 A.2d 1195 (1985); *Erwin and Shafer, Inc. v. Pabst Brewing Co.,* 304 Md. 302, 315, 498 A.2d 1188 (1985). The failure to interpret the statute giving "any" its literal meaning results in an interpretation that is illogical and contrary to legislative intent.

The majority posits that § 8–507 does not apply to inmates considering the legislative history of the Maryland drug statutes. In 1969 Article 43B, titled "Comprehensive Drug Abuse Control and Rehabilitation Act" provided drug treatment for

drug abusers whether or not the drug abuser is convicted of a crime. Article 43B divided those seeking commitment into "Commitment of persons not charged with or convicted of crime," "Commitment of persons upon conviction of crime," and "Commitment of inmates of penal or correctional institutions." Article 43B was repealed and transferred to Health–General Title 9 and titled "Misuse of Drugs" which retained the categories of abusers from Article 43B. The section concerning inmate commitment for drug treatment was repealed with no reenactment of a corresponding section. The section concerning drug treatment for those convicted of a crime was later transferred to Health–General §§ 8–629 through 8–636. Sections 8–629 through 8–636 was repealed in 1989, the same year § 8–507 was enacted. The majority holds that since § 8–507 used the term "defendant" only and not the term "inmate," the section did not apply to inmates because the legislature would have made an express provision relating to inmates. Considering the language of prior legislation, this conclusion is erroneous. Article 43B, § 12 provided:

> Upon conviction of a defendant of any crime in any court of this State having competent jurisdiction, if it appears to the presiding judge by any reason that the defendant may be a drug addict, and the judge elects to proceed herein, such judge shall adjourn the proceedings, suspend the imposition of the sentence, and order the State's attorney to file a petition in the circuit court for that judicial district institution a civil proceeding for the commitment of the defendant to the care and custody of the Authority. *However, no person may be eligible for commitment under this section if he is presently serving a sentence in a correctional institution, is awaiting a sentencing on a conviction of a crime punishable by more than ten years imprisonment or death, except larceny, or has other criminal charges pending against him.*

(Emphasis added).

Under that statute the legislature clearly excluded persons who were to be ineligible.

The legislature allowed a "defendant" to be committed for drug treatment and expressly stated those persons who were ineligible under that section. The statute specifically stated that those who are presently serving a sentence in a correctional institution are ineligible under this section. Section 8–507 provides for the commitment of a "defendant" for drug abuse treatment but has no provision defining those persons who are ineligible under § 8–507. It is so clear upon a review of prior legislation that the legislature knows how to exclude certain persons from a statute if that is their intent. Clearly, had the legislature intended to exclude those presently serving a sentence, i.e., inmates, they would have made an express provision stating those who were ineligible under § 8–507.

It is reasonable to infer that defendants who became inmates have been afforded treatment programs under § 8–507 long after their trial, albeit many pursuant to a motion to revise filed within 90 days but acted upon long thereafter. There is no rational distinction between the 90–day inmate/defendant and the inmate/defendant who fails to file a motion within 90 days where both have remained inmates for some undefined period of time.

## Probation Violations

Footnote 7 is quite interesting and seems to collide with the majority's Rule 4–345(b) 90–day motion theory. It bears repeating here. "Although we are not presented here with the situation of a person appearing before a circuit court in the context of determining whether a violation of probation (VOP) had occurred, we surmise that such a person could be a "defendant" for purposes of H.G. § 8–507(a) as he or she would have completed the predicate period of incarceration imposed by that sentencing judge before commencement of the probationary period and, thus, would not be back before the court in the VOP scenario as an "inmate". This would be true even if the petitioner were imprisoned at the time of the VOP proceeding due to another crime that serves also as the predicate for the VOP proceeding."

The majority opines that when the inmate came before a judge on a probation violation he was restored to his status as a defendant. I have great difficulty believing that the legislature ever perceived such a sophisticated definition of the "defendant." Moreover, if a defendant violated probation and the violation occurs toward the end of the probationary period but a hearing is not conducted until after that probation expires and that defendant/inmate is incarcerated on a charge which precipitated the violation, is he/she not then still a "defendant"? Assuming that the defendant, who has violated his probation, is in need of drug treatment, there is absolutely nothing in the statute to prevent the trial court from committing the defendant to a program pursuant to § 8–507, yet there is no motion filed or which could have been filed within the 90–day period.

## The Lack of a Petition Process

At pages 215 and 216 the opinion states in pertinent part: Between 1966 and 1986 when inmates were afforded a court orderable drug treatment opportunity, the law provided that inmates who wanted to avail themselves of a program had to initiate the request by petition ... more importantly, the legislature provided a means for an inmate to effectuate his request ... the drug treatment law, as it now exists in § 8–507, does not contain any provision acknowledging a similar inmate petition process.

That discussion suggests that the Court would initiate the proceedings and, possibly as the Attorney General argued in his brief " ... there is no provision for any separate fact-finding inquiry." That clearly is not the posture of the law. As § 8–507(a) states "[i]f a court finds in a criminal case that a defendant has an alcohol or drug dependency, the court may commit the defendant as a condition of release, after conviction, or at *any other time* the defendant voluntarily agrees to treatment to the Department for inpatient, residential, or outpatient treatment." (Emphasis added.) In order for the court to "find" anything it would have to engage in a fact-finding process in open court. Moreover, trial judges would

not be searching the records to find former "defendants" who might desire a drug program.

## The New Drug Treatment Program is Not a Panacea

At page 215 the opinion states in pertinent part:

Obviously realizing that it had left the legislative field devoid of any expression that inmates were to be provided with any drug or alcohol treatment programs to combat the 20th Century plague of drug abuse, the General Assembly in 1996 approved Subtitle 6A, § 8–6A–01 to be added to the Health–General Article.

That is clearly not the case. Indeed the legislature by passage of that legislation intended to implement and supplement the existing programs. It must be noted, however, that inmate/defendants are not eligible for relief under those sections until that person has only six months left to serve on the sentence. Theoretically if a defendant/inmate who needs drug treatment and is sentenced to a period of incarceration of five years or 10 years but does not request relief under § 8–507 for a period of 95 days then that person may wait more than four years or more than nine years. That certainly is no panacea.

## What Our Children Will Do This Summer

The intent of this dissenting opinion is to illuminate one small step in the effort to stem the ever-rising tide of death and destruction brought about by drug abuse. There is a scenario that we see all too often in our daily newspapers or on the six o'clock news. In a recent novel, one which I do not believe made the bestseller list, a young student idolizes a teacher who was recently gunned down in a "deadly fusillade" while dining in a New York restaurant with a would-be director of an international drug cartel. The teacher's husband, while going through her effects, finds an envelope with a paper written by the student, Luretta Barnes. In the novel, *Criminal Conversation,* by Evan Hunter, the scenario is described in the paper entitled "What I Will Do This Summer":

What I will do this summer . . .

When school lets out . . .

What I will do . . .

I think I'll watch the clockers and the dealers and the dopers doing their dance of death on this block in hell where I live, and I'll hope to stay alive.

What I will do this summer . . .

I think I'll dodge the bullets of the dealers firing nines from their sleek deadly drive-by machines, and I'll leap over pools of blood on my way to church each Sunday, where I'll pray to stay alive.

What I will do this summer . . .

I think I'll stare at infants in withdrawal in their cribs and I'll curse their junkie moms and the pricks who sold them death, but I'll plan to stay alive.

What I will do this summer . . .

I'll keep running from the man who's trying to rape me where I live in hell and I'll pray to God every day he dies of an overdose before he succeeds because I don't know if I have the strength to stay alive even though I plan to.

At least until the fall.

Because in the fall . . .

In the fall, I'll move from here to another world where there's a beautiful woman I would like to be someday.

In the fall, I'll go back to her and become alive again.

Until next summer, at least.

What I will do *next* summer, I think, I'll start counting the days and weeks and months till autumn.

And . . . if I can survive hell one more time . . .

I'll go back to my school and my teacher.

If we abandon the Eric Lewis Clarks of the world then we abandon the Luretta Barneses.